[No. 15243.   Department Two.—June 29, 1895.]

## MARGARET J. MORFFEW et al., Appellants, *v.* SAN FRANCISCO AND SAN RAFAEL RAILROAD COMPANY et al., Respondents.

| | |
|---|---|
| 107 | 587 |
| 124 | 419 |
| 124 | 497 |
| 107 | 587 |
| 132 | 558 |
| 132 | 562 |
| 132 | 576 |
| 132 | 624 |
| 107 | 587 |
| 133 | 495 |
| 107 | 587 |
| 136 | 105 |
| 107 | 587 |
| 139 | 688 |
| 107 | 587 |
| 142 | 16 |

Construction of Will—Power of Sale—Trust. —Where a testator devised all his property to his wife in trust for his children, and, without appointing any executor, in direct terms provided that if a majority of his executors deem it desirable to sell part of the unproductive estate granted by the will before the final distribution of the same, the proceeds were to be divided among the surviving heirs, the power of sale of the unproductive estate must be considered as given to the widow as trustee, and not as executrix, during her life and ability to act.

Id.—Estates of Deceased Persons—Effect of Distribution to Trustee—Probate Jurisdiction.—The lands distributed after administration into the hands of the widow, as trustee under the will, ceased to be a part of the estate in the course of administration; and, prior to the enactment of sections 1699 to 1703 of the Code of Civil Procedure, the probate court, and its successor the superior court, in the exercise of probate jurisdiction, had no further control of the same; and the circumstance that at a future time there was to be a division of the property among the beneficiaries of the trust did not affect the rule; and the only power to regulate and direct the administration of the trust lay with the court possessed of general equity jurisdiction.

Id.—Power of Sale by Trustee—Confirmation by Court.—After the decree of distribution to the widow as trustee no confirmation of a sale under the power held by her as trustee was required or authorized by law.

Id.—Estate of Trustee.—The trustee takes an estate adequate to the execution of the trust, no more and no less.

Id.—Discretionary Power of Sale—Enlargement of Life Estate— Naked Power to Sell Remainder.—Where there is no trust for the purpose of sale and the power of sale of the unproductive lands is by the terms of the will left discretionary, a life estate, vested in the trustee as an individual, is not enlarged to a fee by the power of sale, and

the power of sale granted to the trustee to sell the remainder after the termination of her life estate is a mere naked power to sell such estate, not coupled with any interest in the fee.

ID. — EXECUTION OF POWER — CONVEYANCE IN NAME OF DONEE. — Where the donee of a power owns an interest in the land granted the fact that the conveyance is made only in the individual name of the donee and makes no reference to the power is not conclusive against the execution of the power; but, where it appears, in view of the circumstances under which the deed was made, including the situation of the subject of the instrument, that the intent of the donee of the power was to transfer the whole estate, and to exercise the power necessary for that purpose, the instrument will be held to work both by the interest and by the power and to pass the entirety of the estate.

APPEAL from a judgment of the Superior Court of Marin County and from an order denying a new trial.

The facts are stated in the opinion.

*Mullany, Grant & Cushing,* for Appellants.

A mere discretionary power to sell does not create a trust for the purpose of sale. (Civ. Code, sec. 857; *Cooke* v. *Platt,* 98 N. Y. 35, 38; *Wood* v. *Nesbitt,* 62 Hun, 449.) A power of sale by an executor must be confirmed by the court. (*Estate of Delaney,* 49 Cal. 76; *In re Williams,* 92 Cal. 183.) The deed having been executed in the individual capacity of Susan Crooks, and without reference to the will, will be applied to her interest, and not to the power. (4 Kent's Commentaries, 334; Devlin on Deeds, sec. 423; *Terry* v. *Rodahan,* 79 Ga. 285; 11 Am. St. Rep. 420; *Owen* v. *Switzer,* 51 Mo. 322; *Phillips* v. *Brown,* 16 R. I. 279; *Pease* v. *Pilot Knob etc. Co.,* 49 Mo. 124; *White* v. *Hicks,* 33 N. Y. 383; *Bell* v. *Twilight,* 22 N. H. 500, 517; *Blagge* v. *Miles,* 1 Story, 427; *Wetherill* v. *Wetherill,* 18 Pa. St. 265; *Keefer* v. *Schwartz,* 47 Pa. St. 503; *Roake* v. *Denn,* 4 Bligh, N. S., 1, 17, 18; *Brooks* v. *Terry,* 14 N. Y. Supp. 238; *Hickey* v. *Peterson,* 9 N. Y. Supp. 917; *Meagher* v. *Thompson,* 49 Cal. 189; *Cotting* v. *De Sartiges,* 17 R. I. 668; *Mutual Life Ins. Co.* v. *Shipman,* 119 N. Y. 325; *Payne* v. *Johnson,* 95 Ky. 175; Tiedeman on Real Property, sec. 569.) The power of sale was a mere naked power. (1 Sugden on Powers, 8th ed., 112; 2 Jarman on Wills, Bigelow's

ed., *1144, note; *Doe* v. *Shotter*, 8 Ad. & E. 905; *Patton* v. *Crow*, 26 Ala. 431; *Shelton* v. *Homer*, 5 Met. 462; *Jameson* v. *Smith*, 4 Bibb. (Ky.), 307; *Wooldridge* v. *Watkins*, 3 Bibb, 350; *Peck* v. *Henderson*, 7 Yerg. 18; *Greenough* v. *Welles*, 10 Cush. 571–76; *Manice* v. *Manice*, 43 N. Y. 368; *De Kay* v. *Irving*, 5 Denio, 653; *Peter* v. *Beverly*, 10 Pet. 532, 565; *Osgood* v. *Franklin*, 2 Johns. Ch. 19; 7 Am. Dec. 513; *Schroeder* v. *Wilcox*, 39 Neb. 136; *Jackson* v. *Schauber*, 7 Cow. 193; *Bergen* v. *Bennett*, 1 Caines Cas. 15; 2 Am. Dec. 281; *Hunt* v. *Rousmanier*, 8 Wheat. 203, 205; *Hawley* v. *Smith*, 45 Ind. 206; *Frink* v. *Roe*, 70 Cal. 310.)

*Sidney V. Smith*, for Respondents.

The facts surrounding the deed show that it was intended as an execution of the power as well as the conveyance of the interest of Mrs. Crooks. (*Blagge* v. *Miles*, 1 Story, 426, 446; *Crane* v. *Morris*, 6 Pet. 619; *Funk* v. *Eggleston*, 92 Ill. 515; 34 Am. Rep. 136; *Amory* v. *Meredith*, 7 Allen, 397; *Sewall* v. *Wilmer*, 132 Mass. 131; *Andrews* v. *Brumfield*, 32 Miss. 107; *South* v. *South*, 91 Ind. 221; 46 Am. Rep. 591; *Ladd* v. *Chase*, 155 Mass. 420; *Campbell* v. *Johnson*, 65 Mo. 439; *Baird* v. *Boucher*, 60 Miss. 326; *Hall* v. *Preble*, 68 Me. 100; *Moody* v. *Tedder*, 16 S. C. 557; *Bishop* v. *Remple*, 11 Ohio St. 277; *Gindrat* v. *Montgomery Gas Light Co.*, 82 Ala. 596; 60 Am. Rep. 769; *White* v. *Hicks*, 33 N. Y. 383; *Hutton* v. *Benkard*, 92 N. Y. 301.)

Britt, C.—Matthew Crooks died in the month of February, 1879, being then the owner of property amounting to seven hundred and fifty thousand dollars, or thereabouts, in value, and consisting mainly of real estate in Marin and other counties of this state. He had at that time about two thousand five hundred acres in the county named, including two certain parcels of salt marsh and tide lands containing together fifteen and twenty-one one-hundredths acres, which marsh and tide land was unproductive and unimproved. Decedent left

a widow, Susan Crooks, who yet survives, and the whole estate was community property. Plaintiffs are the children of said Matthew Crooks and his said wife, and claim, under the provisions of his will below stated, to be the owners as tenants in common of an undivided one-half interest in said fifteen and twenty-one one-hundredths acres of land; they prosecute this action to quiet their alleged title to the same; though in the argument it is admitted by their counsel that their assumed interest is subject to a precedent estate vested in one of the defendants during the life of their said mother. Those of the defendants who resist the action deny that the plaintiffs have any interest in the lands, and claim that the defendant, the San Francisco & North Pacific Railway Company, is the owner of the whole thereof. The court below was of this opinion, and rendered judgment that the plaintiffs take nothing, from which judgment and an order denying their motion for a new trial the plaintiffs appeal.

Said deceased left an olographic will, of which the portions material to the present controversy are as follows: " I bequeath all my property, both real and personal, to my beloved wife, Susan Crooks, in trust for our children [naming them, there being ten in all], subject to the following conditions: That out of the income of the estate my wife, before mentioned, will pay all taxes and assessments, all just debts and current expenses, as they become due, maintain and educate our before-mentioned children, that she will pay after my decease the sum of $5,000 in gold coin to those of the before-mentioned children who attain the age of twenty-one years. It is my wish and desire that none of my property be sold or disposed of in any other way than by lease until my youngest surviving child shall be twenty-one years of age. It is my wish and desire that my wife, Susan Crooks, shall have control of my estate, as well as the income derived from it, during her natural life, and, in case of her death or disability to manage the estate, then I appoint the majority of the surviving

heirs who have attained the age of twenty-one years to carry out the trust herein set forth.   And it is my desire and will that on the death of my wife, Susan Crooks, and after my youngest surviving child shall have attained the age of twenty-one years, that the estate shall be divided among the surviving heirs, share and share alike.

"Should it be desirable by a majority of my executors herein appointed to sell a part of the unproductive estate hereby granted before the final distribution of the same I desire that the proceeds be divided among the surviving heirs, as before directed, but none of the improved or productive property shall be sold before final distribution of the same, and it is my will and desire that the before-mentioned executors shall carry out the provisions of this will without the giving of bonds or the interference or intervention of any court."

No person was, in direct terms, appointed executor of the will, but, in accordance, we suppose, with the testator's apparent intent (Civ. Code, sec. 1371), letters testamentary thereon were, in March, 1879, issued to Susan Crooks, the surviving widow, by the probate court of the city and county of San Francisco, in which court the will was admitted to probate. Two of the children of said deceased were yet minors at the time of the commencement of this action, February 18, 1889.

Upon the petition of the executrix, said probate court, on the eighteenth day of December, 1879, made a decree of partial distribution of the estate of said deceased, containing, among other directions, the following: "That there be and is hereby distributed to her [said Susan] one undivided one-half of the property and tracts of land hereinafter described, to be held by her in her own right, being the one-half thereof belonging to her as common property of the community of the said Matthew Crooks and herself, and the remaining half for the term of her natural life upon the trusts declared in the will of said Matthew Crooks, deceased, as construed by this court as follows: To pay from the income

as it accrues, after maintaining, supporting, and educating the children of the said decedent, as directed by said will, the legacies mentioned in said will as follows [naming the children and the amount to be paid to each], as they shall respectively arrive at the age of twenty-one years, and for the other purposes designated in the will of the said Matthew Crooks, reference to which for that purpose is hereby made." The lands involved in this action were included among the tracts described in said decree.

On April 21, 1884, said Susan Crooks executed to James M. Donahue two certain deeds, each purporting to "grant, bargain, sell, and convey" to said Donahue, his heirs and assigns forever, one of the parcels of land, respectively, in which the plaintiffs assert an interest here. Such deeds were signed and acknowledged by Mrs. Crooks in her individual name, no reference being made in them to her capacity of executrix or trustee, or to the power of sale. The two deeds were substantially identical in form, differing as to the premises described. The sale was not reported to the superior court, nor was any confirmation of the same asked or obtained. Donahue paid to Mrs. Crooks for such land at the time of the execution of said deeds the sum of four thousand dollars. Such title as he then acquired has passed to and is now vested in the defendant the San Francisco & North Pacific Railway Company, which has apparently succeeded to the interests of the other defendant companies. Since the execution of said deeds Donahue and the successive railroad companies claiming under him have had actual possession of the lands, and erected thereon, as the court found, "expensive and valuable improvements of a permanent character partaking of the realty." Some other facts attending the execution of said deeds will be stated in connection with our views of the intent of the grantor. It was alleged in the complaint that Susan Crooks refused to join in the action as plaintiff, and she was therefore

made a party defendant. She filed an answer admitting all the allegations of the complaint.

1. Susan Crooks was, of course, the owner of an undivided one-half of the land, and the judge who tried the case was of the opinion that, in virtue of the will and the decree of distribution, she held the other "one-half in trust for purpose of sale as to unimproved land," and that "full power and authority was specially delegated to her to sell the unimproved lands and premises as should seem desirable to her."    Appellants, however, insist that no trust for the sale of lands is created by the will (and this is conceded by respondents); that the power of sale, such as it is, given to the widow is conferred upon her as executrix and not as trustee; that this was a naked power not coupled with an interest, and hence, under section 1561 of the Code of Civil Procedure, no title passed to Donahue, because the sale to him was not confirmed by the court having probate jurisdiction of the estate of Matthew Crooks.

Counsel agree that the will created a trust to receive the rents and profits of the one-half interest subject to Matthew Crooks' testamentary disposal, and to apply the same as in the will directed; and we are of opinion that the widow took a life estate in such one-half of all the lands upon the trusts created by the will, with an added power of sale—exercisable in her discretion—of the unproductive estate.    In our opinion, also, the power of sale is given to Mrs. Crooks as trustee, and not as executrix, during her life and ability to act.    It will be observed that the testator provided that the proceeds of sale should "be divided among the surviving heirs as before directed," thus requiring that such proceeds should be held for final apportionment among the heirs who should survive the period of distribution in the same manner as the unproductive land itself would be held in default of the execution of the power. The money to be derived from the sale is not to be used to pay expenses, or even legacies, or for any purpose which might be expected to arise in the performance of

CVII. Cal.—38

the duties of an executor. It seems to have been the intention of the testator that the *corpus* of the estate should be preserved as nearly as possible intact until the specified time for distribution should arrive, and to create a trust for the purpose of such preservation, with an ordained succession of trustees, permitting, however, a sale of unproductive property if found desirable. As said in a case not wholly dissimilar to the present: "Under such circumstances the person named as executor takes, not as executor, but as the donee of a power in his character as trustee." (*Bolton* v. *Jacks*, 6 Rob. (N. Y.) 228; and see *Bowyer* v. *Judge*, 11 East, 288; *Newton* v. *Bronson*, 13 N. Y. 593.) To such a person the property which is the subject of the trust is well delivered upon distribution of the estate. (*Barker* v. *Stanford*, 53 Cal. 451; *Robinson* v. *Tickell*, 8 Ves. 142; *Cooper* v. *Thornton*, 3 Brown Ch. 96, 186.) Those were cases of pecuniary legacies, but under our system there can be no essential difference in this regard between the course to be taken by the real estate and that by the personal property of the decedent. (Code Civ. Proc., secs. 1452, 1453, 1658, 1665.)

The lands thus delivered into the hands of Mrs. Crooks as trustee ceased to be part of the estate in the course of administration, and the probate court and its successor, the superior court in the exercise of probate jurisdiction, had no further control of the same. (*Barker* v. *Stanford*, 53 Cal. 451; *Wheeler* v. *Bolton*, 54 Cal. 305; *Buckley* v. *Superior Court*, 102 Cal. 6; 41 Am. St. Rep. 135.) The circumstance that at a future time there is to be a division of the property among remaindermen, beneficiaries of the trust, does not, it seems, affect the rule. (*In re Thompson*, 101 Cal. 351, 353.) It was within the province of the probate court to determine whether a valid trust had been created, but the power to regulate and direct its subsequent administration lay with the court possessed of general equity jurisdiction. (*Estate of Hinckley*, 58 Cal. 518; *In re Thompson, supra.*) (It will be noted that the decree of distribution here was made several years before the enactment of sections

1699–1703 of the Code of Civil Procedure, conferring a limited jurisdiction over testamentary trustees on the probate side of the superior court.) It seems clear that after the decree of distribution, if not before, the widow held the power of sale as trustee and not as executrix, and that section 1561 of the Code of Civil Procedure has no application to the sale made to Donahue, and no confirmation by the court was required, or indeed authorized, by law; and this view, while not restricting the statute in its proper scope, allows effect to the intention of the testator, that the provisions of his will shall be executed without the intervention of any court.

2. It is claimed by respondent that Mrs. Crooks had not merely the life estate, but the fee, in trust; and that a power of sale being added, she had thus a power coupled with an interest in the fee. If this is so, then the case requires no further consideration, for upon that assumption her deeds were doubtless sufficient to pass the title. But the quantity of interest which passes to the trustee in case of an express trust is commensurate with the necessities of his office; the trustee shall have an estate in fee, if that is necessary, to enable him to perform the duties imposed upon him, although it is not in terms given to him by the instrument creating the trust; on this principle a devise of lands in trust to sell clothes the trustee with the fee, because necessary to the execution of the trust. The rule being compendiously stated that the trustee " will take an estate adequate to the execution of the trust—no more nor less." (Perry on Trusts, sec. 320; *Young* v. *Bradley*, 101 U. S. 787.) In the present case there is no trust for the purpose of sale; for trusts are always imperative (*Kidwell* v. *Brummagim*, 32 Cal. 443); and here the power to sell is, by the terms of the will, left wholly discretionary. (Civ. Code, secs. 847, 857; *Cooper* v. *Platt*, 98 N. Y. 35.) And the will does not impose upon the widow any other duty which requires for its discharge an estate in the land greater than for her life. So that there is no enlargement of her life estate to be implied from

the necessities of the trust. And the life estate in the trustee being created by express words in the will, with limitation over, it is not enlarged to a fee by the power of sale. (*Kennedy* v. *Kennedy*, 159 Pa. St. 327; *Foos* v. *Scarf*, 55 Md. 310, and numerous authorities cited; *Payne* v. *Johnson*, 95 Ky. 183, 184; *Hatfield* v. *Sohier*, 114 Mass. 48.)

It is suggested by respondents that the trustee took the fee in virtue of the provision of section 863 of the Civil Code. But, as said of a like statute by the court of appeals of New York: "This section does not prevent a valid limitation of a remainder to the beneficiaries of a trust to take effect upon its termination. The declaration that a valid express trust shall vest the whole estate in the trustees, and that the beneficiaries shall take no estate or interest in the land, clearly refers, as the subsequent sections show, to the trust estate and not to an interest in the land not embraced in the trust." (*Stevenson* v. *Lesley*, 70 N. Y. 516, 517.) So, here, we think that said section 863 has application only to the particular estate in trust, and not to the remainder in the plaintiffs.

In any aspect of the case we conclude that the power of sale of this land in the hands of Susan Crooks was, as to the remainder after the termination of her life estate, a naked power to sell such remainder, and, as a consequence, that the efficacy of her deeds to pass more than an estate for her life depends upon their validity as an execution of such a power. Her authority is well illustrated by the case of *Bloomer* v. *Waldron*, 3 Hill, 361, 365, where it was said that the deed of persons occupying a relation to the title similar to that of Mrs. Crooks here " would carry their life estates, but on any interest beyond that their deed could stand on their power of sale only, independent of their life estates." Accordingly, it is contended strenuously by appellants' learned counsel that since Mrs. Crooks owned in her individual right an undivided one-half interest in the fee of the land, and was besides vested with a life estate

in the other half, with an undoubted power of sale as to the life estate, therefore her deeds to Donahue, which (they say) make no reference, express or implied, to the power, are to be deemed ineffectual to execute the power to dispose of the residue of the estate; that they operate to convey her individual interest and no more; and that the case in this branch is governed by the rule which, after considerable fluctuation of judicial opinion, was established in England by the judgment of the house of lords in *Roake* v. *Denn*, 1 Dow. & C. 437, decided in 1830, affirming the same case *sub nom.* *Nowell* v. *Roake*, 5 Barn. & C. 720. That case arose upon the construction of a will. Kent says: " The general rule of construction, both as to deeds and wills, is that if there be an interest and a power existing together in the same person over the same subject, and an act be done without a particular reference to the power, it will be applied to the interest and not to the power. If there be any legal interest on which the deed can attach it will not execute the power." (4 Kent's Commentaries, 334.) . Instances of the operation of the rule may be found in a number of American cases cited by appellants. (*Cotting* v. *De Sartiges*, 17 R. I. 668; *Bilderback* v. *Boyce*, 14 S. C. 528; *Hollister* v. *Shaw*, 46 Conn. 248; *Patterson* v. *Wilson*, 64 Md. 196; *Mutual Life Ins. Co.* v. *Shipman*, 119 N. Y. 324; and others.)

"The donee of a power may execute it without referring to it or taking the slightest notice of it, provided that the intention to execute it appear." (1 Sugden on Powers, 356.) The question is as to the evidence by which the intention must appear. Thurlow, Lord Chancellor, said in one case: " You must not go out of the instrument itself to gather the construction of it." (*Andrews* v. *Emmot*, 2 Brown Ch. 303.) Appellants hardly press their contention so far; as we understand their argument, they deduce the conclusion—it may be correctly—from the authorities they cite that in no case where the power is not coupled with an interest is the power to be deemed executed, unless, 1. There is

some reference to the power in the instrument of execution; or 2. There is a reference to the property which is the specific subject matter on which the power must operate—in this case the fee after the termination of the trust estate; or 3. The instrument would be wholly inoperative if not held to be an execution of the power; and that no evidence of matters extraneous to the deeds here can be considered to demonstrate the intent of Mrs. Crooks to execute the power, except it show that the case falls within one of three categories thus enumerated. Of course, such a rule leaves little room for interpretation in the light of facts not apparent on the face of the instrument.

It was said in *Roake* v. *Denn, supra,* that " there is not one instance in which the power of appointment is held to have been executed by a will, unless there is a reference in the will either to the power or to the property which is the subject of it, or unless the instrument be wholly inoperative without supposing the execution of a power. . . . . It has been argued that this is a question of intention, and so it is, but then there are rules by which the intention is to be collected, and it would be dangerous to leave a question of this kind to loose and vague conjecture." But it was remarked by Lord Wynford, in delivering his opinion in the same case: "I agree that there are certain rules by which the intention is to be collected, but I think they are bad rules, and I hope they will not long continue to be binding on the judges." And Sugden observes, speaking of the same subject some years later: "It is impossible not to be struck with the number of instances where the intention has been defeated by the rule distinguishing power from property. The statute [1 Vict., c. 26, sec. 27, much like section 1330 of our Civil Code in its effect] now executes the supposed intention in every case of a general disposition by will when the testator has a general power. But in other cases the rule of law is to prevail. The mischief has been increased by the courts, in some recent instances, adopting a strict construction,

with a view to establish a certain rule." (1 Sugden on Powers, 401.) Of a doctrine evoking such criticism from such sources it may be suspected, as remarked by the supreme court of Illinois, that it "has been pressed beyond its legitimate domain by at least some of the adjudicated cases." (*Funk* v. *Eggleston,* 92 Ill. 535; 34 Am. Rep. 136.) It is supposed to rest upon the case of *Sir Edward Clere,* 6 Coke, 18. In *Blagge* v. *Miles,* 1 Story, 426, which is the leading American authority, Judge Story said of Clere's case: "It affords a strong illustration of the true doctrine. In that case it was held that the power was well executed, notwithstanding it was not referred to, because otherwise the devise in the will would be inoperative and void."

Such 'true doctrine,' as declared by Judge Story, is this: "If the donee of the power intends to execute, and the mode be in other respects unexceptional, that intention, however manifested, whether directly or indirectly, positively or by just implication, will make the execution valid and operative. I agree that the intention to execute must be apparent and clear, so that the transaction is not fairly susceptible of any other interpretation. If it be doubtful, under all the circumstances, then that doubt will prevent it from being deemed an execution of the power. All the authorities agree that it is not necessary that the intention to execute the power should appear by express terms or recitals in the instrument." He adds: "It is sufficient that it shall appear by words, acts, or deeds demonstrating the intention." (*Blagge* v. *Miles, supra.*) Following this case are many decisions applying, and some of them enlarging, the principle thus stated. In *Funk* v. *Eggleston, supra,* the subject of the power being real estate, and the question being as to the execution of the power by a will, the court held that in order to arrive at the intention of the testatrix the facts in the case *dehors* the will—such as the very small quantity of land involved, the circumstance that the same must be distributed among more than two hundred heirs of the

donor, if the power was not intended to be executed, the lack of property to satisfy certain legacies except by exercise of the power—as well as all the provisions of the will itself, would be considered; and if these indicated an intention to pass the whole estate the devise "should be held to work both by the interest and by the power, and to pass the entirety." And in *White* v. *Hicks*, 33 N. Y. 383, the court, while rightly rejecting evidence of parol declarations of intent, yet held that the intention to execute the power might be deduced from a comparison of the amount of personal property which a testatrix assumed to dispose of by will with the amount she had subject to such .disposition without the aid of the power, and in this view dissented from the rule of the later English authorities. To similar effect is *Lee* v. *Simpson*, 134 U. S. 572. In *Gindrat* v. *Montgomery Gas-Light Co.*, 82 Ala. 596, 60 Am. Rep. 769, involving the execution of a power by deed, the purpose for which the realty was sold and purchased, viz., the construction on the same of a system of gas-works, to be used in lighting a town, was said to " corroborate the intention of the deed to convey an indefeasible title"; that such purpose " implies the idea of a holding in perpetuity." " The intent is matter *in pais,* to be collected from all the circumstances of the case." (*Crane* v. *Morris*, 6 Pet. 620.) And having the same general drift are *Ladd* v. *Chase*, 155 Mass. 422; *McCreary* v. *Bomberger*, 151 Pa. St. 328; 31 Am. St. Rep. 760; *Boyer* v. *Allen*, 76 Mo. 498, and other cases cited by respondents.

In these authorities we see, at bottom, no more than the familiar principle of evidence now embodied in our code, and which applies alike to deeds and wills: "For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret." (Code Civ. Proc., sec. 1860.) This has been said here to be "the only rule of much value" in the construction

of written instruments. (*Walsh* v. *Hill*, 38 Cal. 487.) And we perceive no substantial reason why an instrument which may or may not be construed as the execution of a power by the donee thereof, according as circumstances may unfold the intent, should form even a partial exception to this general principle, and we hold that it does not. It follows that the court below properly admitted evidence of the situation of the parties to the deeds here in question, and of the property described in the same, and of the circumstances under which they were executed.

But it is said that the evidence admitted is insufficient to sustain the inference of an intent on the part of Mrs. Crooks to act under the power. We recognize the rule that the intent to execute the power must be clear, so that such intent is not left in doubt; but within this principle we are of opinion that the evidence here, taken in connection with the deeds themselves, justifies the conclusion that Mrs. Crooks intended to execute the power and to convey the entirety of the land to Donahue, and that her deeds had that effect. It appears from the record that prior to such deeds the San Francisco & San Rafael Railroad Company, one of the defendants, had commenced an action in the superior court of Marin county to condemn a large part of the land in question, for the purpose of constructing its railroad track thereon and for the construction of wharves and other terminal facilities at Point Tiburon on the shore of the bay of San Francisco. Mrs. Crooks and the plaintiffs, her children, were parties defendant in that action. The company began the work of constructing the track before the deeds were executed. Donahue was a director of the company and acted in its behalf. Mrs. Crooks testified: " I knew where the land was situated, and had reason to know that Donahue wanted it for some railroad purposes. I knew of the railroad having been built, and in the same public manner I knew he had established a station at Tiburon. I remember being sued by Donahue before I made the deed to him. All

my children were joined in that action." The action was withdrawn by the plaintiff December 28, 1888. The price she received for the land—four thousand dollars—is admitted to have been at least its full actual value; it had been appraised as part of the estate of her deceased husband at about seventy-five dollars only. She was then advanced in years and could not reasonably suppose that the purchaser would desire to place improvements of the nature had in view on this land, if one moiety of it must be held upon the uncertain tenure of her life only. "The life estate of an old lady in unimproved lands would hardly have been salable unless under execution." (*Owen* v. *Ellis*, 64 Mo. 77, 89.) It seems incredible that she, actuated by fair and honest motives, as we must assume she was, did not intend to transfer the whole estate or to exercise the power necessary for that purpose.

The judgment and order should be affirmed.

HAYNES, C., and BELCHER, C., concurred.

For the reasons given in the foregoing opinion the judgment and order are affirmed.

McFARLAND, J., HENSHAW, J., TEMPLE, J.

Hearing in Bank denied.