[Civ. No. 6397.   Third Appellate District.—November 26, 1940.]

EMELEEN BATE CHILDS, Plaintiff and Appellant, v. ROBERT FRANK GROSS, as Trustee, etc., et al., Respondents; SUZANNE BATE CHILDS, Cross-Defendant and Appellant.

Meserve, Mumper, Hughes & Robertson, Meserve, Mumper & Hughes, Edwin A. Meserve and E. Avery Crary for Appellants.

Voltaire Perkins, Burr & Smith, Cosgrove & O'Neil, F. B. Yoakum, Jr., and A. J. Cathcart for Respondents Gross et al.

Leander O. Hatch for Respondents Osro W. Childs III et al.

TUTTLE, J.—This action was brought to quiet title to certain stock of the Farmers & Merchants National Bank of Los Angeles, and to compel the transfer of said stock to plaintiff. After trial by the court, findings upon all issues were made against plaintiff, and in favor of all respondents. The appeal is taken from the judgment.

The facts of the case are practically without dispute. On the 20th day of June, 1927, Emeline H. Childs was the owner of 1150 shares of the capital stock of said bank. On or about

the 27th day of June, 1927, she executed a trust agreement whereby she conveyed and transferred to Robert Frank Gross, as trustee, all of the above mentioned stock, and a certificate for said stock was thereupon duly issued by the bank in the name of Robert Frank Gross, as trustee, and delivered to him. Said agreement was signed not only by Emeline H. Childs, but also by her then only living children, Ozro W. Childs, Emma Childs Dwight, Carrie M. Hicks, Ruth Childs Redman, and Hortense Childs Reynolds. The agreement was in the following language:

"THIS AGREEMENT, made this 20th day of June, 1927, by and between Emeline H. Childs, known hereinafter as the 'trustor', and Robert Frank Gross, known hereinafter as the 'trustee':

### WITNESSETH:

That the trustor, for the sum of One Dollar lawful money of the United States of America, to her in hand paid, receipt of which is hereby acknowledged, and for diverse other good and valuable consideration has this day granted, bargained, sold, assigned, set over and transferred to the said trustee 1150 shares of the par value of One Hundred Dollars ($100.00) each of the capital stock of the Farmers & Merchants National Bank of Los Angeles, an association organized under the laws of the United States of America;

TO HAVE AND TO HOLD said shares of stock to said trustee in trust for the following uses:

(a) To exercise all the powers, rights, remedies and privileges of said shares of stock.

(b) To pay all profits, income dividends (except stock dividends) which may accrue from said shares of stock above mentioned to the trustor during the period of her natural life.

(c) To receive dividends paid on the stock of the said Farmers and Merchants National Bank in the same manner as the above designated shares are held and to pay dividends (except stock dividends) from such shares of stock to the trustor during her natural life.

Upon the death of the trustor, the entire trust estate shall be distributed, share and share alike, to the following, viz.: Ozro W. Childs, Los Angeles, California; Emma Childs Dwight, Washington, D. C.; Carrie M. Hicks, Los Angeles, California; Ruth Childs Redman, Los Angeles, California; Hortense Childs Reynolds, Pelham Manor, New York.

In the event of the death of any one of the beneficiaries prior to the death of the trustor, their particular portion of this trust estate shall be turned over to the heirs of their body or to such person as they may designate by will. In the event of the death of the trustee, the beneficiaries then living shall appoint a successor in trust.

Said trustee has paid no consideration to the trustor, and is in no way entitled to any of the benefits or proceeds of the trust estate.''

On the 28th day of January, 1933, said Ozro W. Childs died, leaving a last will and testament. At the outset we wish to call attention to the portion of the will which devises and bequeaths all of the real and personal property in trust. It is referred to by both parties as a "residuary clause". We do not so regard it. After directing the payments of all debts and funeral expenses, the will bequeathes and devises "all the rest, residue and remainder" of the estate in trust. The debts and funeral expenses are charges against the estate, and could not constitute bequests. A "residuary clause" has been defined to be the clause in a will by which that part of the property is disposed of which remains after satisfying bequests and devises. (69 C. J., p. 413, sec. 1472.) As there were no bequests or devises other than the trust provision which disposed of the entire estate, there was no "residue" involved. Said will was admitted to probate, and A. W. Redman was appointed executor thereof. By the terms of the will all of the property of decedent, "both real and personal, of whatsoever kind or nature, and wheresoever situated", was devised and bequeathed to A. W. Redman, to be held in trust, one-half of the income therefrom to be paid to the wife of decedent, Suzanne Bate Childs, and one-half of the income therefrom to be paid to the daughter of decedent, Emeleen Bate Childs (plaintiff herein), as long as both of them were living. It further provided that if the daughter died before the wife, the entire net income from the trust estate should be paid to the wife in monthly installments during her life. It also provided that the trust should cease and terminate upon the death of the wife, and in that event, the whole of the principal of the trust estate should be transferred and delivered to plaintiff. Numerous other provisions are made in the trust agreement, but they do not concern us

here. The plaintiff is the sole surviving heir of Ozro W. Childs.

The Farmers & Merchants National Bank filed a cross-complaint in said action, wherein the said children of Emeline Childs and Ozro W. Childs, The Third, and Emelie Gertrude Childs, children of a deceased child of said Emeleen Bate Childs, are made cross-defendants. It is prayed in said cross-complaint that cross-defendants be required to interplead and litigate among themselves their claims to 230 shares of the stock which are the subject of this litigation. Issues were duly joined on the complaint and on said cross-complaint. The judgment was that plaintiff take nothing by reason of her complaint. It was further adjudged that cross-defendants, Ozro W. Childs, The Third, and Emelie Gertrude Childs, were each the owners of 19-1/6 shares of said stock and that A. W. Redman, as trustee under the will of Ozro W. Childs, deceased, was the owner of 191-2/3 shares of the capital stock mentioned.

One contention made by plaintiff as a ground for reversal of the judgment is that the evidence was insufficient to sustain the following finding made by the trial court:

"That the said Ozro W. Childs, deceased, by his last Will and Testament, intended to and did designate A. W. Redman, as trustee thereunder, and in case of his death, or his refusal or inability to act, the Citizens National Trust & Savings Bank of Los Angeles, as trustee thereunder for the benefit of the said Emeleen Bate Childs and the said Suzanne Bate Childs and others mentioned therein, as the person to whom his particular portion of the trust estate under the trust agreement dated the 20th day of June, 1927, between Emeline H. Childs, as trustor, and Robert Frank Gross, as trustee, and others, should go and be turned over. That by his said last Will and Testament the said Ozro W. Childs intended to and did appoint his share of the stock under said trust agreement dated on the 20th day of June, 1927, to A. W. Redman as trustee, as aforesaid, and in case of his death or his refusal or inability to act, the Citizens National Trust and Savings Bank of Los Angeles, as such trustee."

It is the position of all the respondents, except Emelie Gertrude Childs and Ozro W. Childs, The Third, that the power of appointment under the trust agreement was exercised by Ozro W. Childs by virtue of the application of sec-

tion 125 of the Probate Code. The *other two* respondents seek to uphold the judgment in their favor, under and by virtue of an agreement executed on January 23, 1931, by Ozro W. Childs and the other heirs of Emeline H. Childs, which purported to alter the terms of the original trust agreement of 1927, by providing that the respondents, although they were not named as beneficiaries of said trust, should nevertheless participate in the division of the stock in such a manner that they would each receive one-sixth of the 230 shares of stock to which Ozro W. Childs was entitled.

Taking up the first argument of all respondents except Ozro W. Childs, The Third, and Emelie Gertrude Childs, they contend that the judgment should be upheld, and that the title of the trustee to the 230 shares of stock should be quieted against plaintiff under and by virtue of section 125 of the Probate Code which reads as follows:

"A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, including property embraced in a power to devise."

The determination of this question involves the construction of that portion of said section which reads, at the end thereof: "including property embraced in a power to devise". Appellant contends that the words "devise" and "bequest" are not in every case synonymous, and that the above mentioned section does not apply to power of appointment relating to *personal* property, and that therefore, since Ozro W. Childs' interest in the trust was *personal* property, his will cannot be given effect under said section, as an exercise of his power to designate a successor to his interest in the trust property. We believe that an examination into the history of the section of the Probate Code mentioned will throw considerable light upon the question as to whether or not the legislature intended, by the use of the word "devised", to include the exercise of a power relating not only to real, but also to personal property. At the outset, section 2 of the Probate Code provides: "The provisions of this Code, so far as they are substantially the same as existing statutes, must be construed as continuations thereof, and not as new enactments". By turning to the cross-reference tables which ap-

pear in the Probate Code, and which were prepared by the Code Commission, it appears that section 125 of the Probate Code had its origin in sections 1330 and 1331 of the Civil Code. Those sections formerly read as follows:

"1330. Power to Devise, How Executed by Terms of Will. Real *or* personal property embraced in a power to devise, passes by a will purporting to *devise* all the real *or* personal property of the testator."

"1331. Devise or Bequest of all Real or All Personal Property or Both. A devise or bequest of all the testator's real *or* personal property, in express terms, or in any other terms denoting his intent to dispose of *all his* real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death." (Italics by counsel.)

In 1931, when all the various code sections relating to probate matters were collected in the Probate Code, the legislature, evidently for the sake of brevity, combined the two foregoing sections into present section 125. It appears beyond question that if the said former sections of the Civil Code were now in force, the judgment should be upheld. (See *McAdoo* v. *Sayre*, 145 Cal. 344 [78 Pac. 874].) We are of the opinion that by enacting section 125 of the Probate Code, the legislature intended to continue in effect said sections of the Civil Code. We do not believe that the word "devise" was there employed in a narrow or restricted sense, and are of the opinion that it was the legislative intent to make said sections applicable to a power relating to both real and personal property. This construction is strengthened by the fact that the first portion of said section 125 refers to a "*devise* or *bequest* of all testator's *real* or *personal* property." It is hardly reasonable to suppose that after making this provision, the legislature, at the end of the section, would exclude personal property when it dealt with "a power to devise". ■ The rule of construction laid down in section 2 of the Probate Code follows the weight of authority. In 59 C. J., page 894, section 493, it is said:

"A mere change of phraseology, or punctuation, or the addition or omission of words in the revision or codification of statutes, does not necessarily change the operation or effect thereof, and will not be deemed to do so unless the intent to make such change is clear and unmistakable. Usually a revision of statutes simply iterates the former declaration of

legislative will. No presumption arises from changes of this character that the revisers or the legislature in adopting the revision intended to change the existing law; but the presumption is to the contrary, unless an intent to change it clearly appears. The reasons assigned are that the changes made by the revision may usually be accounted for by the desire to render the provisions more concise and simple, and to bring the laws into some system and uniformity'' . . .

''No rule of statutory construction rests upon better reasoning than that, in the revision of statutes, alteration of phraseology, the omission or addition of words, will not necessarily change the operation or construction of former statutes. The language of the statute as revised, or the legislative intent to change the former statute, must be clear before it can be pronounced that there is a change of such statute in construction and operation. *Landford* v. *Dunklin,* 71 Ala. 594, 609 (quoting *Cole* v. *Sloss-Sheffield Steel, etc. Co.,* 65 So. 177, 178, 186 Ala. 192, Ann. Cas. 1916–E, 99).''

Appellant relies upon the rule laid down in several California cases, and found in *Stockburger* v. *Jordan,* 10 Cal. (2d) 636 [76 Pac. (2d) 671] :

''Where a statute is revised and some parts omitted, and it is clearly the intention to cover the whole subject by the Statute, the omitted parts are considered as repealed or' annulled.''

That rule was not made in respect to a *recodification* of any of our codes, and consequently neither section 2 of the Probate Code nor any similar statute was there considered. In the last analysis it is a matter of determining the legislative intent. The Code Commission states that section 125 of the Probate Code was intended to embody former sections of the Civil Code. It was therefore the intent to leave the law just as it had existed for years past. Appellant also relies upon the *Estate of Ross,* 140 Cal. 282 [73 Pac. 976], which construes section 1310 of the Civil Code, and holds that the word ''devise'' as used in that section cannot be applied to a testamentary disposition of personal property. We are of the opinion that said last named section did not provide a rule of interpretation, but set forth the right of succession in a case where an estate is devised to a child or other relation of the testator, and the devisee dies before the testator, and leaves living descendants. In deciding the case the court used the following language:

"It is strange that the legislature should have limited the application of Section 1310 to devises alone, but the limitation has *always* existed in this State."

*The limitation now contended for by appellant did not exist in this state prior to 1931,* and does not now exist, as we construe the law. The Ross case and the case at bar involve totally different statutes, and are governed by totally different canons of construction. Section 125 of the Probate Code provides a rule for the *construction of wills,* while the section construed in the Ross case created a *right of succession.* ▮ It is elementary that there is no natural right to succeed to the estate of a decedent, but that whoever seeks to establish such right must base it on statute. (9 Cal. Jur., p. 450, sec. 4.) Concluding this phase of the case, we are of the opinion that section 125 of the Probate Code is applicable, and that the contention of these respondents must be upheld.

▮ Disregarding the effect of section 125 of the Probate Code, let us consider the evidence introduced at the trial with reference to the question as to whether or not the testator, Ozro W. Childs, intended to exercise the power given him under the trust agreement, bearing in mind that the will makes no express mention of the trust or any interest which the testator had therein. A number of facts and circumstances surrounding the testator at the time he executed his will appear in the record. In brief, these circumstances are as follows: That his own estate was insolvent; that he was the victim of a heart condition of uncertain prognosis; and that his mother, though elderly, was in good physical condition. It is hardly reasonable to suppose that under such circumstances and conditions the testator would set up an elaborate spendthrift trust for the support and maintenance of his wife and daughter. Numerous authorities have been cited on both sides relating to the law of the case. We have examined them with care, and are of the opinion that the weight of authority is well expressed in 21 R. C. L., sec. 28, page 796, in the following language:

"The prevailing doctrine under modern authorities is that the question whether the conveyance is in execution of a power or not depends solely upon the intent. If from the tenor and effect of the deed or will by which title is conveyed the intent to execute the power is inferable, there is a valid execution of the power, or if without referring to the power,

the will or deed is not operative as the parties evidently intended it should operate, then it will be held a valid and effective execution of the power. It is not necessary that the power should be referred to in the deed or will where the intent is otherwise manifested. It is sufficient if the power exists and is intended to be executed; and that intent is matter *in pais,* to be collected from all the circumstances of the case.''

The only *reasonable* inference to be drawn from the evidence is that the testator thought that he was exercising the power, and that he *intended* to do so. We are not unmindful of the fact that the mother of testator possessed considerable property, but as she was still alive when the will was executed, and as there was no certainty that the testator would succeed to any of her property, such circumstance is not controlling in establishing the fact that the trust set up in the will related to any property which might come from the estate of the mother. It was one of the facts for the trial court to weigh. Under the familiar rule relating to appeals, we are bound by a finding which has any substantial evidentiary support, and such support appears in this record. It is true, as appellant points out, the court in the Morffew case (referred to later), held that ''the intent to execute a power must be clear, so that such intent is not left in doubt''. We do not understand from the foregoing language that the intent must be proved without conflicting evidence, or that it applies where only *one* inference may be drawn from the evidence. As we view the evidence, it measures up to the rule stated. It is extremely unreasonable to suppose that the testator, who was insolvent, would have set up such elaborate trust provisions for the support of his wife and daughter if he did not have in mind the power granted in the trust set up by his mother. This is only one of the facts and circumstances which were before the trial court. That portion of the will establishing the trust takes up over six pages of the clerk's transcript. The will would have been wholly inoperative and futile unless the testator intended it to be an exercise of the power of appointment. The case of *Reed* v. *Hollister,* 44 Cal. App. 533 [186 Pac. 819], presents an illustration of a power of appointment which was exercised by a will which made no reference thereto. In that case a testatrix had a power of appointment over a trust fund amounting to approximately $40,000. The issue

in the case was whether the making of specific bequests amounting to $38,000 was an exercise of the power when the only estate the testatrix had apart from the trust fund amounted to less than $1700. The court held that the specific bequests were effective to exercise the power to appoint her interest in the trust, saying at page 538: "As has been pointed out, Philoclea A. Hollister died leaving no estate whatever, except the interest which had accumulated upon this trust fund, amounting to $1,673.00, and, unless the third provision of her will shall be held to be an exercise of the power of appointment, there is nothing whatever upon which it could operate, so that it is clear from the terms of the will itself, taken in connection with known facts as to the extent of her estate, that she intended to exercise this power, to the extent of apportioning thirty-eight thousand dollars, by the third paragraph of her will." Thus, because the specific bequests of $38,000 would have been virtually a nullity unless regarded as an exercise of the power, the court held that the power was exercised and that the trust fund over which the testatrix had a power of appointment was disposed of by will, even though it referred neither to the power nor to the property which was the subject of the power. Similarly, if the will of Ozro W. Childs be restricted in effect to disposing only of his own property, it passes nothing into the spendthrift trust, whereas if it be construed as an exercise of the power, it disposes of $77,000, that being the proven value of the 230 shares of stock. ■ It is contended by appellant that the intent of the testator as to whether or not he intended to execute the power, cannot be proven by surrounding facts and circumstances, and that such evidence was admitted here, and that the findings of the trial court are predicated upon such evidence. The record shows, however, that no objection was made to the admission of this testimony. In such case, conceding that the testimony was not admissible, findings may nevertheless be made thereon in the absence of objection made at the trial. (*Smith* v. *Golden State Syndicate,* 43 Cal. App. 346 [185 Pac. 209].) ■ We might add, however, that such testimony is admissible in this state. In the case of *Morffew* v. *San Francisco & S. R. R. Co.,* 107 Cal. 587 [40 Pac. 810], the court held that the intent to execute a power by deed is matter *in pais,* to be collected from all the circumstances of the case. The following language is pertinent:

"In these authorities we see, at bottom, no more than the familiar principle of evidence now embodied in our Code, and which applies alike to deeds and wills: 'For the proper construction of an instrument, the circumstances under which it was made, including the situation of the subject of the instrument, and of the parties to it, may also be shown, so that the judge be placed in the position of those whose language he is to interpret.' (Code Civ. Proc., sec. 1860). This has been said here to be 'the only rule of much value' in the construction of written instruments. (*Walsh* v. *Hill*, 38 Cal. 481] 487.) And we perceive no substantial reason why an instrument which may or may not be construed as the execution of a power by the donee thereof, according as circumstances may unfold the intent, should form even a partial exception to this general principle, and we hold that it does not. It follows that the court below properly admitted evidence of the situation of the parties to the deeds here in question, and of the property described in the same, and of the circumstances under which they were executed."

Appellant relied chiefly upon the case of *Thomson* v. *Ehrlich*, 148 S. C. 330 [146 S. E. 149]. That case involved the question as to whether or not the testator executed a power when she made her will. The only thing before the court was the *will itself*, no testimony relating to the surrounding facts and circumstances appearing in the record. The court concluded that no intention to execute the power appeared in the will, and that the will was ineffective in disposing of such power. It is thus apparent that the case is not authority in respect to the question under consideration here.

We now come to that portion of the findings which states that Ozro W. Childs, The Third, and Emelie Gertrude Childs, are each the owners of 19–1/6 shares of the 230 shares of stock. It is contended by plaintiff that it lacks evidentiary support. The contention of the last mentioned respondents in respect thereto has already been set forth. Any title they may have must be derived from an agreement made between the beneficiaries under their mother's trust. These respondents are not named as beneficiaries. Their father had not been made a beneficiary. The other five children evidently sought to remove an obvious inequality in the trust, and they agreed in writing that these two respondents, children of a deceased child of the trustor, should each

have one-sixth interest in the 1150 shares of stock, the *corpus* of the trust. In other words, the original beneficiaries of the trust attempted to modify its terms by adding *other* beneficiaries and reducing proportionately the amount of stock which the original beneficiaries would receive. It is not contended that the trust could thus be altered or modified. These respondents urge that they have a right, arising out of a *contract*. The difficulty confronting them is that the beneficiaries, under the trust agreement, have but one method of transferring their interest in the stock—*by will*. As we view it, the terms of the trust cannot be so modified, and that no right in the stock could be acquired by these respondents, except through an exercise of the power of testamentary disposition. The trial court therefore erred in finding and adjudging that these two respondents had any interest in the stock.

That portion of the judgment which relates to respondents Ozro W. Childs, The Third, and Emelie Gertrude Childs, is reversed, with directions to the trial court to enter findings and judgment in accordance with this opinion in respect to said respondents. In all other respects, the judgment is affirmed. Respondents will pay the costs of appeal.

Thompson, J., and Pullen, P. J., concurred.

Petitions by appellants and respondents to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, were denied by the Supreme Court on January 24, 1941. Curtis, J., Houser, J., and Carter, J., voted for a hearing.