47 Cal.2d 200 (1956)
Estate of FRED MASON CARTER, Deceased. AMERICAN CANCER SOCIETY et al., Appellants,
v.
CHURCH DIVINITY SCHOOL OF THE PACIFIC, Respondent.
S. F. No. 19359. 
Supreme Court of California. In Bank. 
Oct. 19, 1956.
 Peart, Baraty & Hassard, Joseph S. Rogers, Gerald S. Chargin, J. Clark Benson, Richard G. Lean, Douglas, Zingheim & Allen and Bruce F. Allen for Appellants.
 Ridley Stone for Respondent.
 McCOMB, J.
 These are two appeals, consolidated by stipulation, from orders of the superior court instructing (1) the executor of the last will and testament of Mabel C. Carter, deceased, and (2) the trustee under the last will and testament of Fred M. Carter, deceased, to the effect that Mabel C. Carter did not by her will exercise the power of appointment *202 given to her by the will of her predeceased husband, Fred M. Carter.
 Appellants are five charities which are residuary legatees under the will of Mabel C. Carter but which are not mentioned in the will of Fred M. Carter.
 Fred M. Carter and his wife, Mabel C. Carter, each executed wills on September 30, 1949, in the office of their attorney, W. W. Jacka, who had been practicing law since 1933 and prior to that time had been a trust officer for a bank. Mr. Carter later executed one codicil to his will. He died September 7, 1951. Mrs. Carter executed nine codicils to her will, and died April 21, 1954.
 Mr. Carter's will was limited to his separate property and his share of the community property. It left his personal effects to his wife and the residue in two trusts, Trust A and Trust B. The entire income from each trust was to be paid to his wife during her lifetime. Trust A authorized his wife to add to it from her separate or community estate if she so wished, to make withdrawals from the corpus of Trust A, and
 "(e) With respect to the said Trust A, my said wife is hereby granted a power to appoint the entire corpus thereof free of the Trust, in favor of her own estate or of any other beneficiary or beneficiaries whom my said wife may designate, which power shall be exercisable by my said wife alone, and in all events but shall be effective only if exercised by a valid will of my said wife."
 In the event of nonexercise of the power of appointment by Mrs. Carter, Mr. Carter's will provided that the residue of Trust A went into Trust B, which was bequeathed to 28 specific legatees with the residue to respondent, Church Divinity School of the Pacific.
 Mrs. Carter did not transfer her estate into Trust A as was authorized in Mr. Carter's will. The will of Mrs. Carter does not refer in express terms to the power of appointment given her by her husband's will. In her original will paragraph fifth (n) read as follows: "All the rest, residue and remainder of my estate, whether the same be real, personal or mixed and wheresoever the same may be situated, including any and all lapsed bequests under this Will, I give, devise and bequeath unto said Church Divinity School of the Pacific, Berkeley, California, without any restrictions as to the use thereof."
 By a codicil dated March 1, 1953, the foregoing paragraph was changed to read: "All the rest, residue and remainder *203 of my estate, whether the same be real, personal or mixed, and wheresoever the same may be situated, including any and all lapsed bequests under this will, I give, devise and bequeath equally to the following organizations and institutions:"
 "Shriners Hospital for Crippled Children, San Francisco, California."
 Church Divinity School of the Pacific, Berkeley, California.
 Santa Clara County Heart Association.
 American Cancer Society, Santa Clara County Chapter.
 Crippled Children's Society of Santa Clara County, Inc.
 National Foundation for Infantile Paralysis, Inc., Santa Clara County Chapter.""
 Over objection of appellants, the attorney who prepared the wills and several codicils was permitted to testify to conversations with the testator and the testatrix relative to the terms of their wills and the codicil of March 1, 1953, and in particular to statements of Mrs. Carter to the effect that she did not intend by her will or the codicil of March 1, 1953, to exercise her power of appointment under Trust A; also that he had advised Mr. and Mrs. Carter that the power of appointment could only be exercised by a will or codicil, (a) executed after the death of Mr. Carter, which (b) contained language expressly exercising the power of appointment.
 Such testimony was admitted subject to a motion to strike. The trial judge did not expressly rule on the objection but in rendering his decision filed a memorandum opinion in which he stated: "It is my opinion also that the clause in the will under consideration is not ambiguous and therefore Judge Jacka's testimony was not necessary."
 These questions are presented for our determination:
 First: Did Mrs. Carter by her will exercise the power of appointment given to her by the will of her predeceased husband?
 This question must be answered in the affirmative and is governed by these pertinent rules:
 [1] (1) Where the language of a will is clear and unambiguous it must be interpreted according to its ordinary meaning and legal import and the intention of the testator ascertained therefrom. (Estate of Willson, 171 Cal. 449 at 456 [153 P. 927]; Estate of Blake, 157 Cal. 448 at 459 [108 *204 P. 287]; Estate of Avila, 85 Cal.App.2d 38 at 40 [192 P.2d 64]; Estate of Schaetzel, 44 Cal.App.2d 320 at 324 [1] [112 P.2d 324]; Gore v. Bingaman, 29 Cal.App.2d 460 at 470 [85 P.2d 172]; Estate of Bourn, 25 Cal.App.2d 590 at 602 [9] [78 P.2d 193].)
 [2] (2) A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death including property embraced in a power to devise. (Prob. Code, 125; California Trust Co. v. Ott, 59 Cal.App.2d 715 at 717 [1] [140 P.2d 79]; Childs v. Gross, 41 Cal.App.2d 680 at 687 [107 P.2d 424]; Harvard Trust Co. v. Frost, 258 Mass. 319 [154 N.E. 863 at 864 [5]]; cf. Morffew v. San Francisco & S.R.R.R. Co., 107 Cal. 587 at 590 et seq. [40 P. 810].)
 In California Trust Co. v. Ott, supra, at page 716, the following provision in a will was held to be the exercise by the donee of a power of appointment: "I give, devise and bequeath to my beloved wife, Phebe Ott, of Los Angeles, California, all the rest and residue of my estate, both real, personal and mixed, of every kind and nature, wherever the same may be situate, absolute, forever."
 The court said at page 717: "The trial court found 'that said Francis S. Ott, Deceased, intended to and did exercise in his Last Will above set forth, his power of appointment.' We have reached the conclusion that the finding is supported. The will of Francis S. Ott purports, certainly, to devise all his real and personal property; the fifth subdivision clearly gives it that effect, following as it does the two specific bequests. Section 1330 of the Civil Code, as it read from the adoption of that code in 1872 until the section was repealed to emerge as a part of section 125, Probate Code, in 1931, provides: 'Real or personal property embraced in a power to devise, passes by a will purporting to devise all the real or personal property of the testator.' We entertain no doubt that the effect of section 1330 has not been affected by its reenactment in a new context and in new words (Prob. Code, 2; Childs v. Gross (1940), 41 Cal.App.2d 680, 687, 688 [107 P.2d 424]) but we do not need to so hold, for the section, being one of interpretation, continues to control in this case, where the will and trust agreement were both drawn before the section was rewritten into the Probate Code. (See Medical Finance Assn. v. Wood (1936), 20 Cal.App.2d Supp. *205 749, 750 [63 P.2d 1219], and cases cited.) By virtue of section 1330, therefore, the will was properly interpreted as an exercise of the power to devise the trust property, which the trustor-husband had retained."
 The provisions of the will of Mr. Ott in the cited case, which were held to constitute an exercise of his power of appointment, are almost identical with the provisions of Mrs. Carter's will in the instant case.
 [3] (3) Where a will is drawn by an experienced and competent lawyer it is presumed that legal terms embodied in the will are used in their legal sense. (Estate of Rutan, 119 Cal.App.2d 592 at 598 [2] [260 P.2d 111]; Estate of Hollingsworth, 37 Cal.App.2d 432 at 436 [3] [99 P.2d 599]; Estate of Bourn, supra, at p. 595 [1]; Estate of Northcutt, 16 Cal.2d 683 at 689 [107 P.2d 607].)
 Respondent claims that two paragraphs of Mrs. Carter's will indicate her intention not to exercise her power of appointment by the general bequest in paragraph fifth (n). [4] First, respondent urges that in the fourth paragraph of her will relating to her bequest to her husband of all her estate if she predeceased him, after using other descriptive words, she said: "and of which I have the right of testamentary disposition." Respondent claims the quoted words do not appear in the general bequest in paragraph fifth (n) and therefore she did not intend to exercise her power of appointment by paragraph fifth (n).
 This argument fails for the reason that paragraph fourth covers the situation of her death prior to that of her husband, at which time there would be no power of appointment. There would be a community estate and property held in her husband's name in which she, as a result of community property laws, had a right of testamentary disposition. This community property right would not exist after the death of her husband as their community property rights would have terminated, and thus there was no reason for her to use the expression in providing for disposition of her property after his death.
 [5] Secondly, referring to the language in the sixth paragraph of Mrs. Carter's will, reading:
 "If at the time of my death I have transferred my estate into the trusts provided under the terms of the will of my husband, Fred M. Carter, for my benefit, then and in that event the bequests set forth in Subdivisions a, b, c, d, e, f, *206 g, h, i, j, k, l, and m of Paragraph Fifth shall lapse and be of no effect for the reason that the said bequests will have been provided for under the terms of my said husband's will," respondent argues that Mrs. Carter says that if she transfers her estate into the trust provided under her husband's will the 13 enumerated bequests lapse because they are "provided for under the terms of my said husband's will"; that an examination of her husband's will shows that he provided for the same bequests but only if his wife transferred her property into the trusts and failed to exercise her power of appointment; and that therefore Mrs. Carter did not intend to exercise her power of appointment when she used the language in paragraph fifth (n) showing intent to dispose of "all her property."
 This argument also fails for the reason that it does not take into consideration the fact that in addition to the 13 specific bequests mentioned, Mrs. Carter provided 34 specific bequests and directed that the residue be given to six charities, and that in the event she transferred her estate into the trusts, these bequests could not have been satisfied unless she did exercise her power of appointment. By the terms of Mr. Carter's will, in the absence of an exercise by Mrs. Carter of her power of appointment, an intestacy would have resulted not only as to the 13 bequests but as to the entire estate.
 After providing for the care of his wife for her life, the only dispository language in his will is in paragraph eighth, and on two conditions, (a) that his wife transfer her estate into the trusts, and (b) that she did not exercise her power of appointment. Mrs. Carter made no such transfer and there was thus a complete intestacy under her husband's will which was cured when the draftsman of the decree of distribution of his will inserted appropriate language in the decree. It thus is evident that there is nothing in Mrs. Carter's will contrary to the express language of paragraph fifth (n) whereby she disposed of "all" her property, which included the power of appointment.
 Applying the foregoing rules to the facts in the instant case, it is apparent that the language of Mrs. Carter's will was clear and unambiguous. Therefore, under rule (1), supra, it was the duty of the court to ascertain her intention from this document. Under rule (2), which is the established law of this state, the testatrix by disposing of "all the rest, residue and remainder" of her estate exercised her power of appointment, it being presumed under rule *207 (3), supra, since her will and the codicils thereto were prepared by a lawyer of experience and competence that she understood the terms and meaning of the provisions of her will.
 She was as much the owner of the corpus of Trust A as she was of the stocks, bonds and other personal property standing in her own name. She received the entire income of the trust without deduction even for expenses of the trustee, and she had the absolute right to add to or make withdrawals from the corpus. In addition, she had an unlimited power of disposition over the corpus by her will. The power of appointment was thus not any different as a practical matter or in legal effect from a commercial bank account. It is obvious that respondent could not logically argue that notwithstanding her bequest of "all her property" she intended to omit funds on deposit with a bank. Her will shows her express intent to leave "all" her property to specified legatees and the remainder to six charities named in the codicil of March 1, 1953.
 Second: Did the trial court err in permitting testatrix's attorney to testify regarding her oral declarations to show her intent to exercise or not exercise a power of appointment by her will?
 Yes. Section 105 of the Probate Code provides: "When there is an imperfect description, or no person or property exactly answers the description, mistakes and omissions must be corrected, if the error appears from the context of the will or from extrinsic evidence, excluding the oral declarations of the testator as to his intentions; and when an uncertainty arises upon the face of a will, as to the application of any of its provisions, the testator's intention is to be ascertained from the words of the will, taking into view the circumstances under which it was made, excluding such oral declarations."
 [6] In interpreting this section it has been held in California that oral declarations of a testator to the attorney who drew his will are admissible in two types of cases:
 (1) Where there is a latent ambiguity in identification of the intended beneficiaries, that is, which of several persons fitting the description of the beneficiary in the will, was intended by the testator to be the recipient (Estate of Nunes, 123 Cal.App.2d 150 at 156 [3] [266 P.2d 574]; Estate of Donnellan, 164 Cal. 14 at 19 et seq. [127 P. 166]); and *208
 (2) Where there is a latent ambiguity in the description of property in a will (Estate of Hotaling, 72 Cal.App.2d 848 at 856 [7] [165 P.2d 681]; Estate of Greenwald, 19 Cal.App.2d 291 at 296 [2] [65 P.2d 70]; Estate of Dominici, 151 Cal. 181 at 186 [90 P. 448]; see also Estate of Sargavak, 41 Cal.2d 314 at 318 [1] [259 P.2d 897]).
 The rule is thus accurately stated in Hogle v. Hogle, 2 N.Y.S. 172 at 173: "In the case of Charter v. Charter, L.R. 7 H.L. 364, affirming L.R. 2 Prob. & Div. 315, the question of extrinsic evidence in regard to wills was fully discussed. 1 Moak.Eng.R. 249; 12 Moak.Eng.R. 1. It was held that evidence of the state, circumstances, and habits of the family was admissible to aid in the construction of a will; that the only case in which evidence of the declarations of the testator could be received is where the description of the legatee, or of the thing bequeathed, is equally applicable, in all its parts, to two persons or to two things. We have cited this English case because it was very carefully considered; and, while the opinions given in the house of lords did not agree in everything, they did agree as to the point above stated about declarations of the testator. If a testator gave a legacy to 'my nephew John Smith,' and had two nephews of that name, or if a testator gave to a legatee 'my black horse Tom,' and had two black horses by that name, in each of those instances, according to that decision, declarations of the testator would be admissible. But only in such and similar cases. But in the present case declarations of the testatrix were admitted to show that she intended to execute a power of appointment. Such declarations were inadmissible. They do not come within the exception stated in that case, even assuming that such exception is the rule in this state. The same doctrine is distinctly stated in White v. Hicks, 33 N.Y. [383] 387."
 The decision of White v. Hicks, 33 N.Y. 383, cited in the foregoing quotation, has been followed by this court. (See Morffew v. San Francisco & S.R.R.R. Co., 107 Cal. 587 at 600 [40 P. 810].)
 Respondent concedes that there is not any latent ambiguity in Mrs. Carter's will justifying the admission of testimony of her oral instructions to her attorney, but concedes, as the trial court found, "on the face of the will its meaning would appear clear and free of doubt."
 [7] In view of the foregoing authorities the trial court *209 erred in admitting testimony relative to the oral declarations of the testatrix to her attorney.
 For the above reasons, the orders are reversed, with directions to the trial court to enter orders instructing the executor and trustee respectively that decedent, Mabel C. Carter, did by her last will and testament exercise the power of appointment over Trust A which she held under the terms of the will and decree of distribution in the estate of her husband, Fred M. Carter.
 Gibson, C.J., Shenk, J., Carter, J., Traynor, J., Schauer, J., and Spence, J., concurred.