[Civ. No. 36592. Second Dist., Div. Four. Apr. 12, 1971.]

UNITED CALIFORNIA BANK, as Trustee and as Executor, etc., Plaintiff and Respondent, v.
NANCY CLAIRE BOTTLER, a Minor, etc., Defendant and Appellant; JEROME T. STEWART, as Guardian, etc., Defendant and Respondent.

**COUNSEL**

Barrett, Hubbard & Head and James B. Lindholm, Jr., for Defendant and Appellant.

Donnelly, Clark, Chase & Haakh, Ernest M. Clark, Jr., and John A. Donnelly for Plaintiff and Respondent.

Jerome T. Stewart, in pro. per., for Defendant and Respondent.

**OPINION**

**FILES, P. J.**—This appeal deals with the effect of the residuary clause in the will of a testator who was the donee of a special power of appointment of the remainder of an *inter vivos* trust. We have concluded that the will operated to exercise the power in part and that the ostensible effect was to create interests which violated the rule against perpetuities (Civ. Code, § 715.2).

The facts material to our determination here have not been in dispute.

On January 3, 1949, Eugene Dysart Bottler (hereinafter Dysart) executed an *inter vivos* trust which provided that upon his death (which occurred February 8, 1949) his son, Raymond Bottler, was to receive for life the income of the trust estate. On Raymond's death the trust was to terminate and the trustee was required to distribute the principal and any undistributed income therefrom ". . . to such persons within the restricted class hereinafter referred to, and in such manner and proportions as the said Raymond Bottler shall appoint either (1) by his last will and testament duly admitted to probate in the State of California, or (2) in default of such appointment by will or to the extent to which the same shall not be effective, by the last unrevoked written instrument exercising such power and on file with the Trustee at the time of his death; . . ."

The permissible class of appointees consisted of Raymond's spouse, Dysart's spouse, the descendants of Raymond or his spouse, the descendants, other than Raymond, of Dysart or his spouse, or the spouses of such descendants. The trust instrument further provided: "In default of such appointment by either of the methods above provided, or to the extent to which the same shall not be effective, the Trustee shall distribute the Trust Estate to the issue of the said Raymond Bottler on the principle of representation, and if no such issue survive, to the heirs of the Trustor as

such heirs shall then be determined in accordance with the laws of succession of the State of California now in full force and effect."

Raymond died on December 14, 1966, leaving as his sole surviving issue his daughter, Nancy Claire Bottler, appellant herein, born May 25, 1950. Raymond was unmarried at the time of his death. No written instrument exercising the special power of appointment had been executed and Raymond's will, duly admitted to probate, contained no provision expressly mentioning it. The will did, however, contain a residuary clause,[1] which disposed of the remainder of Raymond's estate in trust to United California Bank as trustee, to pay the income therefrom to appellant during her life, and upon her death to apportion the estate among the testator's living grandchildren and the living lawful descendants of his deceased grandchildren. If there were no such persons surviving, the estate was to be divided among the Salvation Army, the Children's Hospital, and the University of Southern California.

United California Bank, as trustee under the Dysart trust, commenced this declaratory relief action, seeking a judgment determining the rights and duties of the parties under the terms of that trust. Nancy, a minor, appeared by her guardians; and the unborn heirs of Nancy appeared through Jerome T. Stewart, who was appointed guardian ad litem for them. After a hearing, at which evidence was received, the trial court determined that Raymond had intended by his will to exercise, and he did exercise in part, the special power of appointment of which he was a donee by virtue of the terms of the Dysart trust. It therefore concluded that, upon the death of Raymond, the Dysart trust assets had passed to United California Bank as trustee under the terms of the testamentary trust established in Raymond's will.

The trial court further held that these assets were to be held for the benefit of Nancy during her life; and upon her death should be distributed to Nancy's descendants, if any; but that the contingent bequests of remainder interests to the charities previously designated were invalid as they were not members of the class of permissible appointees under the special power of appointment. A partial default in the exercise of that power thereby resulted as there was no valid provision under Raymond's will for the disposition of assets of the Dysart trust in the event that there should be no living descendants of Nancy upon her death. The court determined that if such an event were to occur the principal and undis-

---

[1] Article V of the will provides: "All of the rest, residue and remainder of my estate, of every kind or nature and wherever situated, I give and devise to United California Bank, a corporation, or any successor or assign of said bank, whether by way of consolidation, merger, transfer or otherwise, In Trust, for the uses and purposes hereinafter set forth."

tributed interest of the Dysart trust should be distributed to the lawful heirs of Dysart. Judgment was entered accordingly, from which Nancy has brought this appeal.[2]

### The Power Was Exercised in Part

At the time Raymond died Probate Code section 125 read as follows: "A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, including property embraced in a power to devise."

■ The residuary clause of Raymond's will is a bequest which fits the mandate of section 125 and therefore exercises the power insofar as it directs the payment of benefits to Nancy, who is a member of the class to which appointment may be made.

The record shows that the testator was aware of the existence of the Dysart trust, and his will was prepared by a competent attorney who had been his counsel since 1950. This record adequately supports the trial court's determination that Article V of the will was intended to dispose of all of the residue of Raymond's property; and hence Probate Code section 125 operates to dispose of the property which is subject to the power of appointment. (See *Estate of Carter* (1956) 47 Cal.2d 200, 203 [302 P.2d 301]; *Estate of Cox* (1970) 8 Cal.App.3d 168, 191 [87 Cal.Rptr. 55]; *California Trust Co.* v. *Ott* (1943) 59 Cal.App.2d 715 [140 P.2d 79]; *Childs* v. *Gross* (1940) 41 Cal.App.2d 680 [107 P.2d 424].)

■ Appellant argues that the language of Probate Code section 125 should be held applicable only to general powers of appointment, not special powers such as the one involved here.

The cases cited above involve general testamentary powers, and no California cases have been found applying Probate Code section 125 to a power to appoint to a limited class.[3] Nothing in section 125 indicates the

---

[2]Another action between some of the same parties, involving money deposited in the bank, was consolidated with this action, and both controversies were determined in a single judgment. Appellant appealed from the whole judgment, but subsequently abandoned that portion of the appeal which related to the bank deposit controversy.

[3]In *Estate of Erdman* (1968) 264 Cal.App.2d 335 [70 Cal.Rptr. 774] the probate court determined that the residuary clause in a will operated under Probate Code section 125 to exercise a testamentary power of appointment within a defined class. The appellate court opinion did not question that as the law of California, but reversed the judgment upon the ground that Illinois law controlled and that a prior decision of an Illinois court was res judicata.

rule is different when the appointment is limited to members of a class, nor do we have any basis for believing that the Legislature intended any such distinction in the operation of that section prior to the 1969 amendment. We therefore accept its literal wording as applicable to the power involved here.[4]

Appellant invites attention to the enactment of new Civil Code section 1380.1 et seq., which, along with a corresponding amendment to Probate Code section 125, was enacted by the 1969 Legislature, operative July 1, 1970. This new statutory system modifies the former effect of section 125, in that sections 1386.1 and 1386.2 provide rules for determining when a donee intends to exercise a power, with a separate rule for the exercise of general powers. This new legislation was drafted by the Law Revision Commission for the avowed purpose of changing the law. (See 9 Cal. Law Revision Com. Rep. (1969) 307, 319.) The enactment of the new statute does not support any argument that former section 125 should now be given other than the literal reading it had received in the past.

### The Appointment Violates the Rule Against Perpetuities

 It does not appear that the perpetuities problem was ever brought to the attention of the trial court. Appellant raises it for the first time in her brief in this court. Since the rule is based upon public policy rather than private convenience, we cannot invoke any doctrine of waiver, but must face the issue and apply the limitation which the law imposes. (See *In re Walkerly* (1895) 108 Cal. 627, 659 [41 P. 772].)

Civil Code section 715.2 provides: "No interest in real or personal property shall be good unless it must vest, if at all, not later than 21 years after some life in being at the creation of the interest and any period of gestation involved in the situation to which the limitation applies. . . . It is intended by enactment of this section to make effective in this State the American common-law rule against perpetuities."

 Text writers agree that in applying this American common law rule to interests appointed under a special power of appointment the

---

[4]In *Estate of Carter, supra,* 47 Cal.2d 200, the opinion states that, since the donee of the power also had the life income and the right to withdraw corpus, as well as an unlimited power to appoint the remainder, her total interest was equivalent to outright ownership. We do not read that case as meaning that Probate Code section 125 applies only to a donee having such broad powers. The *Carter* opinion cites with apparent approval *Childs* v. *Gross, supra,* 41 Cal.App.2d 680, and *California Trust Co.* v. *Ott, supra,* 59 Cal.App.2d 715, neither of which involved any such broad combination of interests in the donee of the power.

period within which the appointed interest must vest is measured from the time when the power was created. (See Rest., Property, § 392; Gray, *The Rule Against Perpetuities* (4th ed. 1942) § 514 et seq.; 2 Simes, Law of Future Interests (1936) § 537; Halbach, Cal. Will Drafting, Rule Against Perpetuities (Cont. Ed. Bar 1965) § 15.25, p. 532; 2 Witkin, Summary of Cal. Law (7th ed. 1960) Real Property, § 150, p. 995; 9 Cal. Law Revision Com., Rep. (1969) 307, 330; cf. *Estate of Bird* (1964) 225 Cal.App.2d 196 [37 Cal.Rptr. 288] (rule applied to general testamentary power).)

■ The Dysart trust was created on January 3, 1949, before Nancy was born. Thus her life cannot serve as a measure of the period within which interests will vest. Nancy may live more than 21 years after the death of Raymond, and she may outlive the alternative period of 60 years from the date of the creation of the power as permitted by Civil Code section 715.6. The remainders which, under Raymond's will, are to follow Nancy's life estate are invalid because they do not vest within the time allowed by law. The judgment appealed from is therefore in error in providing that upon the death of Nancy, the assets of the Dysart trust shall pass to Raymond's grandchildren and their descendants.

On the other hand, that portion of Raymond's will which passes to Nancy an equitable life estate is a valid exercise of Raymond's power to create an interest which vested within the period allowed by law. ■ Where the power is exercised so as to create an interest which vests within the legal limit, neither the power of appointment itself nor the exercise of the power is invalid by reason of the possibility that the donee could have exercised it to create an illegal restraint. (*Estate of Bird* (1964) 225 Cal.App.2d 196, 199 [37 Cal.Rptr. 288].)

■ Since the appointments which Raymond attempted to make of the remainders after Nancy's life estate are invalid, this remainder interest passed to Nancy under the alternative clause of the Dysart trust. That clause provides that, to the extent that Raymond's appointment shall not be effective, the trustee shall distribute the trust estate to the issue of Raymond. Nancy is the only issue of Raymond. The remainder therefore belongs to her.

■ Nancy's counsel urges this court to declare that the valid and invalid portions of Raymond's attempted exercise of the power are so inseparably blended that the whole should be declared ineffective; and that the trust should be terminated as having no useful purpose and the entire corpus of the Dysart trust distributed to her.

Such a result would thwart the testator's intention to an extent greater than is necessary to carry out the limitation imposed by law.

Civil Code section 715.5 provides: "No interest in real or personal property is either void or voidable as in violation of Section 715.2 of this code if and to the extent that it can be reformed or construed within the limits of that section to give effect to the general intent of the creator of the interest whenever that general intent can be ascertained. This section shall be liberally construed and applied to validate such interest to the fullest extent consistent with such ascertained intent."

It was Raymond who created the equitable life estate which is involved here, and it is his intention which must concern us. No one can doubt he intended that throughout Nancy's lifetime everything he left her should remain under the management of the corporate trustee. This intention is lawful, and can be carried out in harmony with the rule which invalidates Raymond's plan for the remainders. Under the terms of Raymond's will the United California Bank holds the assets in trust for Nancy for her lifetime, and under the alternative clause of the Dysart trust the remainder is vested in Nancy. Her equitable life estate and her legal remainder do not merge because it was the testator's expressed intention that the legal and equitable estates remain apart during her lifetime. The result here is similar to that accomplished by the exercise of a power of appointment in *California Trust Co. v. Ott* (1943) 59 Cal.App.2d 715, 718 [140 P.2d 79].

The portion of the judgment which declares the interests in the Dysart trust is reversed. The case is remanded to the superior court with directions to enter a new judgment in accordance with this opinion. No costs on appeal shall be recovered.

Kingsley, J., and Irwin, J.,* concurred.

*Retired judge of the superior court sitting under assignment by the Chairman of the Judicial Council.