[Civ. No. 25060. Fourth Dist., Div. Two. July 26, 1982.]

Estate of MURIEL EDDY, Deceased.
FLOYD E. CHAMBERLIN, as Administrator With the Will
Annexed, etc., Petitioner and Respondent, v.
BEVERLY ANNE WONG, Claimant and Appellant.

COUNSEL

Kellner, Mitten & Ybarrondo and James C. Mitten for Claimant and Appellant.

Paoli & Paoli, Paoli, Paoli & Short and Sylvia L. Paoli for Petitioner and Respondent.

OPINION

KAUFMAN, Acting P. J.—The primary question on appeal is whether the decedent Muriel Eddy (Mrs. Eddy) effectively exercised in her will a general discretionary power of appointment given her by the will of her predeceased husband Everett Eddy. The trial court concluded she had and that the appointive property was subject to disposition in her estate. We conclude she did not and that the property is not subject to disposition in her estate.

In 1968 Everett Eddy and Muriel Eddy were husband and wife. Each had been married before. Mr. Eddy had a son by a previous marriage, William E. Eddy. Mrs. Eddy had no children but she did have a sister, Brenda Hemming. During her earlier marriage she also had a stepson, Floyd E. Chamberlin.

On March 18, 1968, Mr. and Mrs. Eddy executed their respective wills, drafted by the same law firm and witnessed by the same persons.

Mr. Eddy's will purported to dispose of all of his own property, both his separate property and his half of the community property, as well as Mrs. Eddy's half of the community property. His will provided that if Mrs. Eddy should elect to take under the will, all said property, both

separate and community, was to be divided in half and distributed into two trusts, trust "A" and trust "B." Mr. Eddy's son, William E. Eddy, was named as trustee of both trusts and Mrs. Eddy was named as the beneficiary of both trusts for her lifetime. Upon the death of Mrs. Eddy, trust "B" was to terminate and the property be distributed to Mr. Eddy's son, William E. Eddy. With respect to trust "A" it was provided that if Mrs. Eddy's sister, Brenda Hemming, survived Mrs. Eddy's death, the trust was to continue for the benefit of the sister for her lifetime and upon her death the remainder, if any, be distributed to Mr. Eddy's son, William E. Eddy.

However, Mr. Eddy's will also provided: "If my said wife shall survive me, she shall have the power to appoint, by Will or Codicil thereto, all or any part of the principal and undistributed income of TRUST 'A,' free of the trust, in favor of her estate, or any persons whom she shall designate. The power shall be deemed to have been exercised *only if by specific reference thereto in her Will or Codicil*, my said wife shall express her intention to exercise the same." (Italics added.)

Mrs. Eddy's will provided that Mr. Eddy should receive all of her property if he survived her death but thereafter provided in pertinent part: "If my said husband does not survive me, then all of the property I own, including, but not by way of limitation, *any property over which I have a power of appointment*, shall go as follows:

"a. If my sister, BRENDA HEMMING, does not survive me, then all of said property shall go to my husband's son, to-wit, WILLIAM E. EDDY.

"b. If my said sister does survive me, then all of said property shall go to WILLIAM E. EDDY as trustee. The beneficiary of said trustee shall be my sister, BRENDA HEMMING . . . .

"     .     .     .     .     .     .     .     .     .     .     .     .     .

"c. . . . Upon the death my said sister, the trust herein created shall ipso facto cease and the trustee shall convey in fee all of the remaining corpus of said trust and any accumulated income, to my said husband's son, to-wit, WILLIAM E. EDDY." (Italics added.)

Mr. Eddy died on May 19, 1973, survived by Mrs. Eddy and his son, William E. Eddy. His will was duly admitted to probate, and Mrs. Eddy elected to take under his will. By decree of distribution dated

May 1, 1974, the assets of his estate were distributed to William E. Eddy as trustee and trusts "A" and "B" were funded. There is no issue in this appeal concerning trust "B" or its assets.

William E. Eddy served as trustee until the date of his death on November 9, 1977. His will named Beverly Anne Wong as executor, and after his death she was appointed successor trustee of the trusts.

On April 18, 1979, Mrs. Eddy died. Brenda Hemming, her sister, predeceased her. Mrs. Eddy's will was admitted to probate and, her nomination of William E. Eddy as executor having failed because of the latter's earlier death, Floyd E. Chamberlin, her former stepson, was appointed administrator of her estate with the will annexed.

On January 10, 1980, Floyd E. Chamberlin filed a creditor's claim in Mrs. Eddy's estate for $42,500 or the total estate, whichever was greater. The alleged basis for the claim was the care of and personal services rendered to Mrs. Eddy from the summer of 1978 until her death on April 18, 1979.[1]

On April 7, 1980, Floyd E. Chamberlin as administrator with the will annexed of the estate of Mrs. Eddy filed a petition to determine heirship pursuant to Probate Code section 1080 requesting that the assets of trust "A" created by the will of Mr. Eddy be determined to be a portion of the estate of Mrs. Eddy. The contention was that Mrs. Eddy had validly exercised the power of appointment over the property comprising the corpus of trust "A" by the language in her will, "all of the property I own, including, but not by way of limitation, *any property over which I have a power of appointment*, shall go as follows:...." (Italics added.)

After hearing, the court issued an order determining that Mrs. Eddy had indeed validly exercised the power of appointment and that all the income and principal of trust "A" passed to the estate of Mrs. Eddy pursuant to subdivision (c) of Civil Code section 1389.3. (All statutory references will be to the Civil Code unless otherwise specified.)

Beverly Anne Wong as successor trustee of the trust appeals.

---

[1]The creditor's claim was rejected by the court in a minute order dated July 7, 1980. No issue concerning that ruling is presented on this appeal.

To the extent there is any difficulty involved in the disposition of this appeal, it lies in the fact that the controlling statutory law is different now (more technically, April 18, 1979, the date of Mrs. Eddy's death) from what it was when Mr. and Mrs. Eddy's wills were executed in 1968.

In 1968, Probate Code section 125 provided: "A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, *including property embraced in a power to devise.*" (Stats. 1931, ch. 281, § 125, p. 594; italics added.)

In 1969, however, the statutory provision was amended to read: "*Except as provided by Sections 1386.1 and 1386.2 of the Civil Code relating to powers of appointment*, a devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death." (Stats. 1969, ch. 155, § 3, p. 409; italics added.)

On the date of death of the decedent, section 1386.2 read: "A general power of appointment exercisable at the death of the donee is exercised by a residuary clause or other general language in the donee's will purporting to dispose of the property of the kind covered by the power unless: [¶] (a) *The creating instrument requires that the donee make a specific reference to the power or to the instrument that created the power*; or [¶] (b) The donee manifests an intent, either expressly or by necessary inference, not to so exercise the power." (Stats. 1969, ch. 155, § 1, p. 405.[2]) (Italics added.)

---

[2]Section 1386.2 as enacted by Statutes 1969, chapter 155, section 1, was repealed in Statutes 1981, chapter 63, section 1, which also enacted a new section 1386.2 reading: "A general residuary clause in a will, or a will making general disposition of all of the testator's property, does not exercise a power of appointment held by the testator unless specific reference is made to the power or there is some other indication of intention to exercise the power." (Stats. 1981, ch. 63, § 2, p. 118.) Subdivision (d) of section 10 of the 1981 statute, however, provided: "The repeal and addition of Section 1386.2 of the Civil Code as made by this act applies to any case where the donee dies on or after the operative date of this act." Section 11 of the 1981 statute provided: "This act shall become operative on July 1, 1982." Mrs. Eddy died April 18, 1979. Thus, the 1981 statute is inapplicable to this case.

In addition, section 1385.2 enacted in the same chapter as section 1386.2 (Stats. 1969, ch. 155, § 1, p. 404) provides: "If the creating instrument expressly directs that a power of appointment be exercised by an instrument which makes a specific reference to the power or to the instrument that created the power, the power can be exercised only by an instrument containing the required reference."

■ Appellant contends that by the terms of Mr. Eddy's will, the power of appointment given Mrs. Eddy could be exercised only by specific reference to the power and that the language in Mrs. Eddy's will, whether or not it was sufficient to exercise the power at the time the two wills were drawn and executed,[3] was insufficient to constitute a valid exercise of the power of appointment under sections 1385.2 and 1386.2 (subd. (a)) which constitute the applicable law. Appellant is plainly correct.

■ Preliminarily, there can be no question but that the 1969 version of section 1386.2 and section 1385.2 are applicable to this decision notwithstanding that Mr. and Mrs. Eddy's wills were executed in 1968. Section 1380.2, enacted as part of the same statute that enacted sections 1385.2 and 1386.2 (Stats. 1969, ch. 155, § 1, p. 402) provides in pertinent part: "If the law existing at the time of the creation of a pow-

---

[3]Appellant also makes a rather persuasive argument that the testamentary scheme established by the wills of Mr. and Mrs. Eddy was to benefit Mrs. Eddy during her lifetime, thereafter her sister if she survived Mrs. Eddy and ultimately William E. Eddy, Mr. Eddy's son, and that the scheme could not have contemplated the language of Mrs. Eddy's will operating to validly exercise the power of appointment under the terms of her will when all of the beneficiaries named in her will were predeceased. The result, she argues, would be an escheat to the state. We also observe that since the two wills were apparently drafted by the same law firm, if the drafter had intended the language of Mrs. Eddy's will to constitute an exercise of the power, one would have expected a specific reference to the power inasmuch as he apparently also drafted the power itself which provided that it could be exercised only by such specific reference.

However, we do not deem it necessary or appropriate to speculate on either the intentions of the drafter or the parties at the time the wills were drafted and executed. To the extent the actual intent of Mrs. Eddy is pertinent at all, it is her intent immediately preceding her death that would be significant. As to that there can be little question, because it is established without contradiction that some 15 months before her death Mrs. Eddy was informed by an attorney that the language in her will was insufficient to exercise the power because of the requirement for a specific reference to the power. The fact is, however, that under the language of section 1386.2 effective at the time of Mrs. Eddy's death, her actual intent is irrelevant unless her representative were claiming that she intended *not to exercise the power.* (See § 1386.2, subd. (b), quoted in the text, *ante.*) Regardless of what might or might not have been intended, the statute provides that when the creating instrument requires specific reference to the power, the power can only be exercised by such specific reference to the power.

er of appointment and the law existing at the time of the release or exercise of the power or at the time of the assertion of a right given by this title differ, the law existing at the time of the release, exercise, or assertion of a right controls." Although Mrs. Eddy's will was executed in 1968, insofar as the purported exercise of the power is concerned, it speaks as of the date of her death, March 18, 1979, long after July 1, 1970, the effective date of the 1969 enactments.

■ Turning to the question whether the language in Mrs. Eddy's will, "all of the property I own, including, but not by way of limitation, any property over which I have a power of appointment, shall go as follows," is sufficient to constitute a specific reference to the power of appointment given her by Mr. Eddy, respondent first contends apparently that Mr. Eddy's will did not require a specific reference to the power. He states: "In the Will of Everett Eddy, the testator only required that 'my said wife shall express her intention to exercise the same.' [Citation to clerk's transcript omitted.] He did Not require her to refer to the instrument that created the power, which he could have specifically required if he intended the exercise of the power to only be valid if such a reference to that creating instrument was, in fact, made." Respondent then invokes the provisions of section 1386.1 which provides that "[t]he exercise of a power of appointment requires a manifestation of the donee's intent to exercise the power" and then lists a number of factors from which the manifestation of such intent may be found to exist. Respondent then argues that on the basis of the enumerated factors the language used in Mrs. Eddy's will evidences her intent to exercise the power.

The fatal flaw in respondent's argument is his failure to recognize a distinction between a requirement for a reference to the instrument creating the power and a reference to the power itself, a distinction expressly made in the statutory provisions. (E.g., §§ 1385.2, 1386.2, subd. (a) [1969 version, see fn. 2, *ante*, and accompanying text].) It is true that Mr. Eddy's will did not require a reference to his will as a precondition to exercise of the power of appointment given Mrs. Eddy. It did, however, require a specific reference to the power of appointment, not just a general manifestation of intent to exercise the power. The language was: "The power shall be deemed to have been exercised *only if by specific reference thereto* in her Will or Codicil, my said wife shall express her intention to exercise the same." (Italics added.)

Sections 1385.2, and 1386.2, subd. (a) (1969 version, see fn. 2, *ante*, and accompanying text) make it absolutely clear that if the creating instrument requires a specific reference to the power, the power may be exercised only by such specific reference to the power. The 1969 Law Revision Commission comment to the 1969 version of section 1386.2 states: "This section [1386.2] creates an exception to Section 1386.1." (See West's Ann. Civ. Code (1982 Supp.) p. 99.) Respondent's reliance on section 1386.1 is, therefore, misplaced.

Finally, it is suggested that the language in Mrs. Eddy's will, "all of the property I own, including, but not by way of limitation, any property over which I have a power of appointment," does in fact constitute a specific reference to the power of appointment sufficient to comply with the requirement in Mr. Eddy's will that the power be exercised only by specific reference to the power. We do not agree.

The quoted language in Mrs. Eddy's will is not even a direct general reference to all powers of appointment she might have; it refers to *property* over which she has a power of appointment. Patently, that is not a specific reference to the power of appointment given her by Mr. Eddy, which is what Mr. Eddy's will requires and what section 1385.2 and the 1969 version of section 1386.2, subdivision (a), expressly require. However, even if the quoted language in Mrs. Eddy's will were generously construed to be a general reference to any and all powers of appointment she might have, it would not be sufficient under the applicable statutes. The 1969 Law Revision Commission comment to section 1385.2 reads in pertinent part: "This section permits a donor to require an express reference to the power to assure a conscious exercise by the donee. In such a case, the specific reference to the power is a condition to its exercise. *This condition precludes the use of* form wills with *'blanket' clauses exercising all powers of appointment owned by the testator.*" (See West's Ann. Civ. Code (1982 Supp.) p. 96, italics added.)

We are referred to a number of sister-state decisions said to bear upon the problem at hand. We find them of limited assistance because none involved statutes similar to ours and in most of them the problem was treated as one of ambiguity, requiring an interpretation of the will of either the donor or the donee or both and revolving around the question of intent. (E.g., *First Union Nat. Bank* v. *Moss* (1977) 32 N.C.App. 499 [233 S.E.2d 88]; *Cross* v. *Cross* (Mo.App. 1977) 559 S.W.2d 196; *McKelvy* v. *Terry* (1976) 370 Mass. 328 [346 N.E.2d

912]; *Shine* v. *Monahan* (1968) 354 Mass. 680 [241 N.E.2d 854]; cf. *First Nat. Bank of McMinn County* v. *Walker* (Tenn. 1980) 607 S.W.2d 469.) We do not find ambiguous the requirement in Mr. Eddy's will that Mrs. Eddy exercise the power only by specific reference to the power. Moreover, there is nothing ambiguous about the language of the 1969 version of section 1386.2 or section 1385.2, and we have already noted that in view of the clearly stated statutory provisions applicable to this decision, we do not deem it necessary or appropriate to speculate about the intent of the parties or the drafter of the wills. (See fn. 3, *ante.*)

We agree with the analysis and reasoning of the court in *Holzbach* v. *United Virginia Bank* (1975) 216 Va. 482 [219 S.E.2d 868]. The opinion of the court reads in relevant part: "Holzbach insists that donee's intent controls this question. Pointing to donee's general reference to *all* powers and to the affidavit which indicates that she was aware of the particular power in question, Holzbach says that 'it is clear that the donee intended to exercise the power of appointment in favor of her sister'. [¶] Holzbach applies the wrong test of compliance. The test is not whether donee intended to appoint but rather whether donee *manifested* her intent in the manner prescribed by donor, *i.e.*, by making specific reference 'in her will' to the power granted by donor's will...." (*Id.*, at p. 871, italics in orig.)

Further: "On brief, the parties speculate as to donor's motives in requiring donee to manifest her intent in the manner he prescribed.... [¶] It is not necessary to our decision to guess which of these motives prompted donor .... The requirement imposed is not unlawful; it does not offend public policy ..:. When a donor imposes such a requirement, a donee ... can make no valid appointment affecting that property unless he complies with donor's requirement. [¶] Pursuing his right to dispose of his property as he saw fit, donor ... imposed a lawful requirement that his donee manifest on the face of her will an intent to exercise the power by making specific reference to the power created in his will. While donee's will makes general reference to powers of appointment, it makes no specific reference to donor, to his will, or to the power created by his will.... [D]onee's will failed to comply with donor's requirement and, therefore, failed to make an effective appointment of donor's property." (219 S.E.2d at p. 872; see also *First Nat. Bank of McMinn County* v. *Walker, supra*, 607 S.W.2d at pp. 474-475; cf. *In re Estate of Schede* (1967) 426 Pa. 93 [231 A.2d 135].)

■ Having concluded that Mrs. Eddy failed to make an effective appointment of the property comprising the corpus of trust "A," it remains to be determined whether or not, as the trial court determined, the undistributed income and principal of trust "A" passes to the estate of Mrs. Eddy pursuant to section 1389.3, subdivision (c). We conclude it does not.

The parties are in agreement that the controlling statute is section 1389.3, the text of which as it read at the date of death of the decedent is set forth in the margin.[4]

Subdivision (a) of the 1969 version of section 1389.3, which provides that when the donee fails to appoint the property or makes an ineffective appointment, the property not effectively appointed passes to the person or persons named by the donor as takers in default or, if there are none, reverts to the donor, clearly pertains to the situation at hand unless it is made inapplicable by its introductory clause, "Except as provided in subdivisions (b) and (c)." Subdivision (b) is clearly not in point. However, as previously indicated the trial court found subdivision (c) applicable.

Subdivision (c) reads in relevant part: *"Unless the creating instrument manifests a contrary intent,* when the donee of a general power of appointment makes an ineffective appointment other than to a trustee

---

[4]Section 1389.3 then read: "(a) Except as provided in subdivisions (b) and (c), when the donee of a discretionary power of appointment fails to appoint the property, releases the entire power, or makes an ineffective appointment, in whole or in part, the appointive property not effectively appointed passes to the person or persons named by the donor as takers in default or, if there are none, reverts to the donor.

"(b) Unless either the creating instrument or the instrument of appointment manifests a contrary intent, when the donee of a general power of appointment appoints to a trustee upon a trust which fails, there is a resulting trust in favor of the donee or his estate.

"(c) Unless the creating instrument manifests a contrary intent, when the donee of a general power of appointment makes an ineffective appointment other than to a trustee upon a trust which fails, the appointive property passes to the donee or his estate if the instrument of appointment manifests an intent to assume control of the appointive property for all purposes and not only for the limited purpose of giving effect to the expressed appointment." (Stats. 1969, ch. 155, § 1, pp. 407-408.)

The foregoing version of section 1389.3 was amended in 1981 (Stats. 1981, ch. 63, § 5, p. 120) but the operative date of the amended section was postponed until July 1, 1982, and subdivision (a) of section 10 of the amendatory statute provides: "Sections 1389.3 and 1389.4 of the Civil Code as amended by this act apply to any case where the donee dies on or after the operative date of this act." (Stats. 1981, ch. 63, § 10, p. 121.)

upon a trust which fails, the appointive property passes to the donee or his estate if the instrument of appointment manifests an intent to assume control of the appointive property for all purposes..…" (Italics added.) While we can agree with the trial court that some of the language of subdivision (c) might seem to make it applicable, the introductory clause, "[u]nless the creating instrument manifests a contrary intent," renders it inapplicable. The will of Mr. Eddy, the creating instrument, does manifest a contrary intent. It specifically provides in paragraph 3 on page four: "If at the time my wife dies, as aforementioned in this Paragraph, she is not survived by her said sister, BRENDA HEMMING, this TRUST 'A' shall ipso facto cease and terminate, and the trustee shall convey, in fee, all of the remaining corpus of said TRUST 'A,' and any accumulated income, to my said son, WILLIAM E. EDDY."

Thus, subdivision (a) of the 1969 version of section 1389.3 controls, and the property does not pass to the estate of Mrs. Eddy.

The judgment is reversed with directions to the trial court to make an order determining that the power of appointment was not effectively exercised and that the property is not subject to disposition in the estate of Muriel Eddy.

McDaniel, J., concurred.

**ZIEBARTH, J.***—I respectfully dissent.

In reaching its conclusion that the decedent Muriel Eddy did not effectively exercise in her will the power of appointment given her by the will of her predeceased husband, the majority seems to be relying primarily on the provisions of Civil Code sections 1385.1, 1385.2 and section 1386.2, as amended.

I submit, however, that those statutory provisions are not determinative of the issues raised in this appeal. As will be shown hereinafter, the aforementioned statutory provisions have the effect of merely *reinforcing* the requirements imposed by Everett's will (as the donative instrument), rather than adding any additional requirements thereto.

To illustrate this point, we will compare the pertinent provisions in Everett's will with the applicable statutory provisions.

---

*Assigned by the Chairperson of the Judicial Council.

Everett's will provided in pertinent part as follows: "If my said wife [MURIEL] shall survive me, *she shall have the power to appoint, by Will or Codicil thereto*, all or any part of·the principal and undistributed income of TRUST 'A,' free from the trust, in favor of her estate, or any persons whom she shall designate. *The power shall be deemed to have been exercised only if by specific reference thereto in her Will or Codicil, my said wife shall express her intention to exercise the same.*" (Italics added.)

Even though Muriel was granted a general power of appointment,[1] that power was subject to several restrictions. Those restrictions were: (1) Muriel could only exercise the power by her will or a codicil thereto; (2) the power was limited to all or any part of the principal and undistributed income of trust "A"; (3) *the power could only be exercised if Muriel made a specific reference thereto in her will or codicil*; and (4) Muriel had to express her intention to exercise the power.

The applicable statutory provisions are Civil Code sections 1385.1, 1385.2 and 1386.2, and they read as follows:

Civil Code section 1385.1: "(a) Except as otherwise provided in this title, *if the creating instrument specifies requirements as to the manner, time, and conditions of the exercise of a power of appointment, the power can be exercised only by complying with those requirements.*

"(b) Unless expressly prohibited by the creating instrument, a power stated to be exercisable by an inter vivos instrument is also exercisable by a written will." (Italics added.)

Civil Code section 1385.2: "If the creating instrument expressly directs that a power of appointment be exercised by an instrument *which makes a specific reference to the power or to the instrument that created the power*, the power can be exercised only by an instrument containing the required reference." (Italics added.)

---

[1]Based on the statutory definitions contained in Civil Code sections 1381.2, subdivision (a), and 1381.3, it appears that the type of power that Everett granted to Muriel was a "testamentary" power which was "general" in nature. The power was "testamentary" because Muriel could only exercise it in her will or codicil. (See Civ. Code, § 1281.3.) The power was "general" rather than "special" in that Muriel was granted the power to appoint all or any part of the principal and undistributed income of trust "A" free of said trust, *in favor of her estate* or any persons whom she might designate. (See Civ. Code, § 1381.2, subd. (a).)

Civil Code section 1386.2: "*A general power of appointment exercisable at the death of the donee is exercised by a residuary clause or other general language in the donee's will* purporting to dispose of property of the kind covered by the power *unless*:

"(a) *The creating instrument requires that the donee make a specific reference to the power or to the instrument that created the power*; or

"(b) The donee manifests an intent, either expressly or by necessary inference not to so exercise the power." (Italics added.)

A careful review of the three statutes quoted above should cause one to conclude that, in general, they simply require a donee of a power of appointment to comply with any requirements imposed in the creating instrument as to the manner, time, and conditions of the exercise of a particular power of appointment. (Civ. Code, § 1385.1.) A donor is also permitted to require an express reference to the power to assure a *conscious* exercise by the donee. In such a case, the specific reference to the power is a condition to its exercise. (Civ. Code, § 1385.2.) Finally, unless the creating instrument requires that the donee make a specific reference to the power or to the instrument that created the power or the donee manifests an intent (either expressly or by necessary inference) not to so exercise the power, a general power of appointment (exercisable at the death of the donee) is deemed to be exercised by a residuary clause (or other general language in the donee's will which purports to dispose of the property of the kind covered by the power). In other words, despite the absence of a manifestation of intent by the donee to exercise the power, a residuary clause exercises a power under the circumstances stated. (Civ. Code, § 1386.2.)

In summary, these statutes have the legal effect of merely reinforcing the requirement contained in the donative instrument that Muriel make a "specific reference" in her will or codicil as a condition to the effective exercise by her general power of appointment. Stated another way, the attorney who drafted both of the wills in question in 1968 had a sound legal reason to use the language that he employed in both reciprocal wills because of the state of law at that time with regard to powers of appointment. Also, either because pure coincidence or because the attorney possessed some power of prescience, the specific language that he employed in the two wills anticipated the enactment by the Legislature of the aforementioned statutes a year later in 1969.

To understand the state of the law in California in 1968 regarding powers of appointment and the resulting objectives that the Legislature had in mind when it enacted these statutes (i.e., tit. 7, Civ. Code, § 1380.1 et seq.), an exploration of the legislative history might be helpful.

It has long been the general rule in California that it is not necessary for a donee of a power of appointment to explicitly refer to a power of appointment in the exercise thereof. (See 50 Cal.Jur.3d, § 18, pp. 402-404.) Thus, in the absence of any such requirement in the instrument creating the power, a will need not refer to a power of appointment in order to exercise the power. (See *Estate of Carter* (1956) 47 Cal.2d 200, 204 [302 P.2d 301]; *Estate of Cox* (1970) 8 Cal.App.3d 168, 192 [87 Cal.Rptr. 55]; *Estate of Erdman* (1968) 264 Cal.App.2d 335, 341 [70 Cal.Rptr. 774].)

Consistent with the foregoing general rule, the Probate Code still provides in section 125 that (except as specifically provided by the Civil Code sections which relate to powers of appointment), a devise or bequest of all the testator's real or personal property in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death. This has been construed to include bequests of personal property as well as devises of real property. (*Childs v. Gross* (1940) 41 Cal.App.2d 680 [107 P.2d 424].) The foregoing statutory provision (both prior to and after its amendment in 1969), has been held to include the exercise of a power of appointment. (See *United California Bank v. Bottler* (1971) 16 Cal. App.3d 610, 615-616 [94 Cal.Rptr. 227.)

Prior to 1969, it had been the law of this state that (based on Prob. Code, § 125) a devise or bequest in general terms of all of the testator's property was a sufficient manifestation of the donee's intent to exercise a power of appointment so that such general language would constitute an exercise of the power. *This was true even though the testator did not intend to do so.* (See 3 Witkin, Summary of Cal. Law (8th ed. 1973) p. 1990; 50 Cal.Jur.3d, Powers, § 18, pp. 402-404; *Estate of Carter, supra,* 47 Cal.2d at pp. 204-205; *United California Bank v. Bottler, supra,* 16 Cal.App.3d at p. 615; *California Trust Co. v. Ott* (1943) 59 Cal.App.2d 715, 717 [140 P.2d 79]; and *Childs v. Gross, supra,* 41 Cal.App.2d at p. 687.)

However, in 1969, the California Legislature amended Probate Code section 125 and added title 7 to the Civil Code entitled "Powers of Appointment" (i.e., Civ. Code, §§ 1380.1 through 1392.1).

Prior to 1969, Probate Code section 125 read as follows: "A devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death, *including property embraced in a power to devise.*" (Stats. 1931, ch. 281, § 125 p. 594.)[2] (Italics supplied.)

Thus, when Everett and Muriel executed their companion wills on March 18, 1968, the Legislature had not yet amended Probate Code section 125 nor enacted title 7 of the Civil Code (i.e., Civ. Code, §§ 1380.1 through 1390.4). It was, therefore, clearly the law then that (pursuant to Prob. Code, § 125, as interpreted by the courts), a devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his or her intent to dispose of all his or her real or personal property, passed all the real or personal property which he or she was entitled to dispose of by will at the time of his or her death, *including property embraced in a power to devise.* (See *Estate of Carter, supra,* 47 Cal.2d at p. 204; *United California Bank* v. *Bottler, supra,* 16 Cal.App.3d at p. 615; *Estate of Cox* (1970) 8 Cal. App.3d 168, 192 [87 Cal.Rptr. 55]; *California Trust Co.* v. *Ott, supra,* 59 Cal.App.2d at p. 717; *Childs* v. *Gross, supra,* 41 Cal.App.2d at p. 687.)

In commenting on the state of the law in California prior to 1969 relative to the exercise of power of appointments, Witkin indicates that prior to the amendment of Probate Code section 125 and the enactment

---

[2]Since its amendment in 1969, this particular statute has read as follows: "*Except as provided by Sections 1386.1 and 1386.2 of the Civil Code relating to powers of appointment,* a devise or bequest of all the testator's real or personal property, in express terms, or in any other terms denoting his intent to dispose of all his real or personal property, passes all the real or personal property which he was entitled to dispose of by will at the time of his death." (Italics added.) (Stats. 1969, ch. 155, § 3 p. 409, operative July 1, 1970.)

The official comments of the Law Revision Commission regarding the 1969 amendment to Probate Code section 125 indicate that the amendment now makes it clear that this section does not operate with respect to powers of appointment. Therefore, since 1969, a provision in a will devising or bequeathing all of the testator's real or personal property *operates with respect to powers of appointment only to the extent provided in Civil Code sections 1386.1 and 1386.2.*

of Civil Code section 1386.1, subdivision (a), by the Legislature in 1969, California courts, applying Probate Code section 125, held that a devise or bequest in general terms of all of the testator's property "would constitute an exercise of the power, *even though the testator did not intend to do so.*" (3 Witkin, Summary of Cal. Law (8th ed. 1973) Real Property, § 273, p. 1990.)

Presumably the lawyer who drafted the companion wills of Everett and Muriel in 1968 was aware of the fact that the California Supreme Court in the case of *Estate of Carter, supra*, 47 Cal.2d at page 204, had interpreted Probate Code section 125 to mean that a residuary clause, which did not mention the intention to exercise general testamentary power, nevertheless exercised the power despite the donee's specific intent not to exercise the power. (See also *Childs* v. *Gross, supra*, 41 Cal.App.2d at p. 687, which had construed Prob. Code, § 125 to apply to both realty and personalty.)

One way of eliminating the potential trap for the unwary that had defeated the donee's clear intent in the *Estate of Carter* case, was for a donor of a power of appointment to make it a requirement in the creating instrument that the donee either make a specific reference to the power or to the creating instrument before it could be validly exercised.

Therefore, no doubt the major purpose that the draftsman had in mind in including in Everett's will the requirements (1) that Muriel make a specific reference in her will or codicil to the power of appointment that he had granted to her and also (2) that she express her intention to exercise said power, was to avoid the potential problems caused by the *Estate of Carter* decision and Probate Code section 125.

To prevent the inadvertent exercise of powers of appointment through the use of such general terms in wills, the Legislature enacted in 1969 Civil Code section 1386.1, subdivision (a), which provides that a devise or bequest in general terms of all of the testator's property *is not* a "manifestation of the donee's intent to exercise the power." Rather, such general terms now constitute the exercise of a general power of appointment *unless*: (1) The donor has required that the donee make a specific reference to the power or to the instrument that created it; or (2) The donee "manifests an intent, either expressly or by necessary inference, not to so exercise the power." (See Civ. Code, § 1386.2.)

Having reviewed the pertinent language of the creating instrument and also of the applicable statutes and the background behind each, we now review the specific language that forms a part of the residuary clause of Muriel's will. That language in pertinent part reads as follows:

"If my said husband does not survive me, then all of the property I own, including, but not by way of limitation, *any property over which I have a power of appointment, shall go as follows*:

"a. If my sister, BRENDA HEMMING, does not survive me, *then all of said property shall go to my husband's son, to-wit, WILLIAM E. EDDY*." (Italics added.)

The question then is whether Muriel complied with all four of the above requirements imposed on her by Everett's will (as reinforced by the statutes mentioned above).

A review of the above-quoted provisions of Muriel's will should cause one to conclude that she clearly satisfied the first condition in the creating instrument. She did not attempt to exercise her power by any inter vivos instrument, but only through her last will.

As to the second condition, Muriel did not specifically mention trust "A" or the property that was subject to that trust but she did mention "any property over which she had a power of appointment" as being the subject of the residuary clause of her will. Consequently, she did not attempt to exercise her power of appointment over any property that had not been made subject to her power of appointment.

Skipping over to the fourth condition, Muriel did not indicate in exact words that she intended to exercise her power. However, she did use other language which indicates that she intended to dispose of all of her property including "any property over which I have a power of appointment." The language Muriel used should cause one to conclude that she also satisfied the fourth condition.

Returning to the troublesome third condition, it is apparent that Muriel did not make a specific reference in her will to "*the* power of appointment" which she received from Everett's will (which the appellant contends she had an obligation so to do). However, Muriel did make a general reference to "*a* power of appointment" which she had (which

the respondent contends was sufficient for a proper exercise of Muriel's power).

The question then is whether the language that Muriel used in her will satisfied the requirements of both the creating instrument and Civil Code section 1385.2? More specifically, did the donative instrument (as reinforced by Civ. Code, § 1385.2) require a specific reference by a donee of a power of appointment to "*the* power" (as appellant contends) or merely to "*a* power" (as the respondent contends)?

Unfortunately, in resolving this question, we do not have the benefit of any previous reported decisions of any California appellate court. It appears, therefore, that this case is one of first impression—at least here in California.

We must, therefore, look elsewhere for guidance in this matter. Fortunately, as noted by the majority, the appellate courts of several of our sister states have been called upon to decide issues similar to those raised in this appeal.

I disagree with the conclusion reached by the majority that these out-of-state decisions are of only limited assistance because none of them involve the consideration of statutes similar to ours. As pointed out above, the statutes that are applicable to the issues raised in this appeal should not affect the result because those statutes merely *reinforce* the requirements of the donative instrument, not add to it. Therefore, as to the basic question of whether the language contained in Muriel's will satisfied the requirements of Everett's will, at least some of the decisions reached by the other appellate courts are helpful in suggesting what the result should be in the case at bench.

The out-of-state decision that involved the closest factual similarity to the case at bench is the North Carolina case of *First Union National Bank* v. *Moss* (1977) 32 N.C.App. 499 [233 S.E.2d 88]. In that case, the North Carolina Court of Appeals was called upon to decide almost exactly the same issue which is before this court, which was whether a wife in her will, by devising the remainder of her estate "including any property or estate over which I have or may have *any power of appointment*" (italics added), effectively executed the power of appointment given to her by her husband in his will, which required that "she appoint and direct in an effective will or codicil *specifically referring to this power of appointment.*" (Italics added.)

The North Carolina court upheld the decision by the trial court which had concluded that the wife in her will had effectively exercised her power of appointment over a marital deduction trust that had been created by the husband's will. The reviewing court held that the wife, by devising the remainder of her estate *including any property or estate over which she had any power of appointment*, effectively executed the general power of appointment given her by her husband in his will, even though his will required that she appoint and direct in an effective will or codicil "... *specifically referring to this power of appointment*." (Italics added.)

The *First Union* court also stated at pages 92-93 that: "Appellants concede that she [Mrs. Moss] possessed a general power of appointment. Mr. Moss did not give his wife the minimum power over the marital share that he could have in order to obtain maximum tax benefits. Rather he gave her broad powers over disposition, limited only to the requirement of a specific reference in her will, which powers indicate confidence and trust in her judgment and ability to manage her property. The fact that even if the power were exercised, Mr. Moss elsewhere in his will made generous provisions for his children, the other natural objects of his bounty, lends support to the conclusion that he had no intention to restrict his wife unduly in the disposition of the property subject to the power of appointment."

The North Carolina court in *First Union* also put a great deal of weight on the fact that in the wife's will there was a distinction between the dispositive provisions if she predeceased him as opposed to those that were applicable if he predeceased her. The *First Union* court indicated (at p. 93) that such a distinction in the wife's will "... leads to the conclusion that she intended to exercise the power of appointment created in her husband's will..." The *First Union* court then goes on to state (also at p. 93) as follows: "The fact that Mrs. Moss made reference to property under a power [of appointment] only in the event that her husband died first is evidence that she was concerned only with the power created in his will, and was thereby making special reference to it...." The language indicates an awareness by Mrs. Moss that only if her husband predeceased her would she possess two classes of property, (1) property under appointment and (2) her personal estate, and it demonstrates an intention to make a distinction between these two classes of property."

We note that the same type of language and the same type of distinction was contained in Muriel's will in the case at bench.

The North Carolina court then went on to state (233 S.E.2d at p. 93) that: "Circumstances attendant the execution of the wills resolve any ambiguity and compel the conclusion that the power was exercised. Both wills were executed on the same day, were witnessed by the same people, contain substantially identical language except for the dispositive provisions, and reveal similar concerns. It is reasonable to infer that the same person drafted the two wills to reflect the common interests and concerns of Mr. & Mrs. Moss, and [also] to infer that each spouse was aware of the contents of the other's will. *The fact that a donee of a power was aware of the existence of a power of appointment at the time of the execution of the donee's will is a circumstance which supports the conclusion that ambiguous language in donee's will reflects an intention to exercise the power.* 62 Am.Jur.2d, Powers of Appointment § 49 (1972). *The fact that the provision will have no meaning unless it operates to exercise the power is also a circumstance which supports the conclusion that the donee thereby intended to exercise the power.* 62 Am.Jur.2d, *supra*, § 51." (Italics added.)

As we observed above, the wills of both Everett and Muriel were also drafted by the same lawyer, executed on the same day, witnessed by the same people, contained substantially identical language except for the dispositive provisions, and revealed similar concerns. It is also reasonable to assume that Everett and Muriel were also aware of the contents of each other's wills and that their common scrivener drafted their mutual wills in a manner that reflected their common interests and concerns.

It is also reasonable to infer that because the same lawyer drafted both wills, that he intended to draft each of them in such a manner that each will would be compatible and would reflect the common interests and concerns of both Everett and Muriel. We can also infer that both Everett and Muriel were aware of the contents of the other's will, either by direct knowledge or through knowledge imputed to each of them through the attorney who was presumably acting as an agent for each of the spouses.

Not only were both Everett and Muriel presumably aware of the contents of each other's wills at the time of execution (so that both were aware of the existence of the conditions placed on the exercise of the

power of appointment provided for in Everett's will), but we also know that Muriel was reminded of those requirements by appellant's counsel, Mr. Mitten, about 15 months before her death.[3]

It should be noted that the case at bench and the *First Union* case can be distinguished from all of the other out-of-state decisions mentioned by the majority in that these two cases both involve the construction of companion or reciprocal wills of a husband and wife which were drafted by the same lawyer and executed at the same time and before the same witnesses.

The *First Union* court placed great weight on that particular factor in reaching the conclusion that the donee wife had effectively exercised her power of appointment. The North Carolina court stated (233 S.E.2d at p. 92) as follows: "A will which admits of two constructions is ambiguous, for ambiguous simply means capable of being understood in more senses than one. [Citation.] *The will of the donor of a power of appointment and the will of the donee must be construed together.* [Citations.] *Joint construction is particularly appropriate in the present case since the two wills were executed on the same day before the same witnesses, one of whom was an attorney, appoint the same executor and contain very substantially identical language except for the dispositive provisions.*" (Italics added.)

The court in the *First Union* case then went on to comment (also at p. 92) as follows: "We are called upon to construe the term in the will of Cecil Paul Moss which provided that his wife could dispose of the principal of the marital trust by 'specifically' referring to the power and the term in which the will of Helen R. Moss which devised any property over which she may have 'any power of appointment.' The word 'specifically' usually means explicitly or definitely. [Citations.] It does not always mean that an item be individually named, *and where it is clear*

---

[3]The record on appeal clearly indicates that (1) the donee, Muriel Eddy, was informed by appellant's counsel, James C. Mitten, approximately 15 months before her death, that in his opinion, the language in her will did not effectively exercise the power of appointment which she had under the terms of her husband's will because it did not refer specifically to that power; and (2) that the donee, Muriel Eddy, had knowledge that all of the beneficiaries named in her will were deceased as of the date of William Eddy's death on November 9, 1977. In spite of this knowledge Muriel did nothing to change any of the provisions in her will.

These facts certainly create an inference that Muriel deliberately refrained from changing any of the language of her will, even after the death of her stepson William Eddy, and therefore she intended the result which was found by the trial court.

*that the intention of the drafter is to the contrary, such narrow meaning will not be assigned. Administrator, F.A.A. v. Robertson*, 422 U.S. 255, 95 S.Ct. 2140, 45 L.Ed.2d 164 (1975); *California v. Richardson*, 351 F.Supp. 733 (D.C.Cal. 1972). The word 'any' has a diversity of meanings, and its meaning in a particular case depends on the context or subject matter of the statute or document in which it is used. [Citation.] As used in a will, 'any' may have one of several meanings according to the subject which it qualifies and should be construed in context with other words used in the bequest. [Citation.] We conclude that the terms 'specifically' and 'any' as used in this context are sufficiently ambiguous to allow an examination of the circumstances surrounding the execution of the wills in addition to the four corners of the instruments. [Citations.]" (Italics added.)

It is also interesting to observe that the language used by the donor in the *First Union* case which the donee was held to have complied with seems to be slightly more specific than the language employed in Everett's will. The husband donor in *First Union* used the following language in his will: ". . . to such appointee or appointees of my wife (including my wife's estate) and in such amounts or proportions and upon such terms and provisions as my wife shall appoint and direct in an effective will or codicil *specifically referring to this power of appointment.*" (Italics added.) (*First Union, supra*, 233 S.E.2d at p. 90.)

On the other hand, in Everett's will, he used the following language: "The power shall be deemed to have been exercised *only if by specific reference thereto in her will or codicil*, my wife shall express her intention to exercise the same." (Italics added.)

Also, the language used by the donee in *First Union* seems to be much less specific than the language employed by Muriel in her will. The former language read as follows: ". . . including any property or estate over which I have *or may have* any power of appointment . . ." (Italics added.) (*First Union, supra*, at p. 91.)

Muriel's will contained the following language: ". . . then all of the property I own, including, but not by way of limitation, any property over which *I have* a power of appointment . . . ." (Italics added.)

The result reached by the North Carolina court in the *First Union* case was also reached by the Supreme Judicial Court of Massachusetts in the cases of *McKelvy v. Terry* (1976) 370 Mass. 328 [346 N.E.2d

912], and *Shine* v. *Monahan* (1968) 354 Mass. 680 [241 N.E.2d 854], and also by the Missouri Court of Appeals in the case of *Cross* v. *Cross* (Mo.App. 1977) 559 S.W.2d 196.

I also recognize, however, that the highest courts of Tennessee, Virginia and Pennsylvania reached a contrary result in the respective cases of *First National Bank of McMinn County* v. *Walker* (Tenn. 1980) 607 S.W.2d 469, *Holzbach* v. *United Virginia Bank* (1975) 216 Va. 482 [219 S.E.2d 868], and *In re Estate of Schede* (1967) 426 Pa. 93 [231 A.2d 135]. However, each of these decisions can be factually distinguished from both the case at bench and the *First Union* decision.

First of all, the case at bench and the *First Union* case can be distinguished from the *First National, Holzbach* and *Schede* cases because the former cases involve the construction of companion or reciprocal wills drafted by the same lawyer and executed by husbands and wives at the same time and before the same witnesses.

Although the *First National* case also involved the construction of the wills of both a husband and a wife, the husband's will which constituted the donative instrument was executed by him about *three years after* the wife had executed her will. Therefore, in *First National* the donee wife could not have known of the donative provisions and conditions in her husband's will when she previously executed her will. Therefore, the two wills could not have been part of a common testamentary plan of both the husband and wife as appears to have been the situation in the case at bench and in the *First Union* case.

As far as the *Holzbach* case is concerned, although the husband therein established a testamentary marital deduction trust in which he gave to his wife a general testamentary power of appointment, there is no indication in the facts therein that both the wills of the donor husband and donee wife were drafted by the same lawyer and were executed by the testators on the same date before the same witnesses. Also there is no indication in the facts in *Holzbach* that both wills were intended to be part of a common testamentary plan.

In the *Schede* case, the Pennsylvania high court affirmed the decision by the trial court which had held that where the husband gave his wife the testamentary power to "appoint by specifically referring to this Will," the donee wife did not exercise such power when she devised to

her second husband property "of which I may have a power of appointment" without specifically referring to the will of her first husband.

There is a discussion about the *Schede* decision in the Missouri case of *Cross* v. *Cross, supra.* The majority opinion in *Cross* states that ". . . the holding [in *Schede*] appears to be limited only to the defective exercise of *special* powers," (559 S.W.2d at p. 207) the Pennsylvania court having determined that the applicable statute applied only to *general* powers. Therefore, the *Schede* case can be distinguished from the case at bench and also from the *First Union* case on that basis.

It has been held that where a will is drawn by an experienced and competent lawyer, it is presumed that the legal terms embodied in the will are used in their legal sense. (See *Estate of Carter, supra,* 47 Cal.2d at p. 205, and the other citations contained therein.) It should also follow that where the same lawyer drafts companion wills for the donor and donee of a power of appointment, which wills are executed at the same time, that there is rebuttable presumption that any requirements imposed on the donee by the will of the donor were legally satisfied by the original language of the donee's will.

Considering the apparent purpose in 1968 for the inclusion in Everett's will of the above-mentioned requirements on Muriel to accomplish a valid exercise of her power of appointment, together with the statutory requirements which now apply to Muriel's purported exercise of her power, I submit that the language employed by Muriel in her will satisfies both the requirements contained in Everett's will and also the various statutory requirements.

Although the residuary clause in Muriel's will did not make a specific reference to *the power* of appointment that was granted her, she did refer to *a power* of appointment which she had. Her referral to "*a power* of appointment" satisfies Everett's apparent intention of avoiding the potential "*Carter* pitfall" of having Muriel inadvertently exercise her power of appointment (by merely disposing of all of her property in general terms in the residuary ·clause of her will), when she really did not intend to do so.

It has also been held that although the donee did not literally comply with the terms of the decedent-donor's will regarding the *manner* of exercise of a power of appointment (i.e., delivery to the decedent's trustee during the donee's lifetime), her compliance was reasonable because she

made every effort to have the exercise of the power delivered through her conservator and attorney. (See *Estate of Wood* (1973) 32 Cal.App. 3d 862, 881-884 [108 Cal.Rptr. 522].)

It should also be noted that this doctrine of substantial compliance based on the *Wood* decision finds support in section 347[4] of the Restatement of Property which reads as follows:

"Failure of an appointment to satisfy formal requirements imposed by the donor does not cause the appointment to be ineffective in equity if

"(a) the appointment approximates the manner of appointment prescribed by the donor; and

"(b) the appointee is a wife, child, adopted child or creditor of the donee, or a charity, or a person who has paid value for the appointment."

It should also be kept in mind that both Civil Code sections 1385.2 and 1386.2 make a distinction between requiring a specific reference "to the power" and "to the instrument that created the power."

It would seem that to require Muriel to make a more specific reference to the power which was created in her husband's will would be tantamount to requiring her to specifically refer "to the instrument that created the power." Everett's will clearly did not contain any such requirement.

When the Legislature enacted Civil Code sections 1385.2 and 1386.2, it appears that it intended that there would be a clear distinction between requiring a specific reference "to the power" and a specific

---

[4]See the discussion concerning section 347 of the Restatement of Property and related matters in *Cross v. Cross, supra*, 559 S.W.2d 196, 205. Also in the *Holzbach* case, *supra*, 219 S.E.2d 868, 872-873, the two dissenting justices would have given effect to the purported exercise of her general power of appointment by the donee wife through a proposed rule that "where a donee undertakes to exercise a testamentary power of appointment by a validly executed will substantial compliance with the donor's requirements should suffice." This they reasoned would satisfy the purpose behind any "specific reference" provision in a donative instrument to avoid an inadvertent exercise by the donee where the language used by the donee to exercise the power indicates a knowing and deliberate exercise. (See discussion about the *Holzbach* dissent in *Cross, supra*, 559 S.W.2d at p. 208.)

reference "to the instrument that created the power." Requiring a more specific reference by Muriel in this case would seem to have the consequence of blurring that clear legislative distinction.

For the reasons discussed above, I would hold that the purpose of both the donor and the applicable statutes in requiring a specific reference to the power donated was merely to prevent an inadvertent exercise thereof. Further, that the specific language used by the donee and also the facts clearly show a knowing and deliberate exercise of her power by the donee. Also, under the theory of "substantive compliance" as recognized by the *Wood* decision and section 347 of the Restatement, the exercise of the power by the donee should be held to have been valid under the terms of the donor's will as reinforced by applicable statutes.

Assuming arguendo that Muriel *validly* exercised her power of appointment by the particular language that she employed in her will, the next question is whether she *effectively* exercised her power.

It has been noted that all of the beneficiaries named in Muriel's will had predeceased her. That being the situation, it seems apparent that the exercise by Muriel of her general power of appointment was "ineffective" from a legal standpoint. Civil Code section 1389.3 (prior to its recent amendment, Stats. 1981, ch. 63, § 5) provided as follows:

"*Except as provided in subdivisions (b) and (c)*, when the donee of a discretionary power of appointment fails to appoint the property, releases the entire power, *or makes an ineffective appointment, in whole or in part*, the appointive property not effectively appointed passes to the person or persons named by the donor as takers in default or, if there are none, reverts to the donor.

"(b) Unless either the creating instrument or the instrument of appointment manifests a contrary intent, when the donee of a general power of appointment appoints to a trustee upon a trust which fails, there is a resulting trust in favor of the donee or his estate.

"(c) Unless the creating instrument manifests a contrary intent, *when the donee of a general power of appointment makes an ineffective appointment other than to a trustee upon a trust which fails, the appointive property passes to the donee or his estate if the instrument of appointment manifests an intent to assume control of the appointive*

*property for all purposes and not only for the limited purpose of giving effect to the express appointment.*" (Italics added.) The Law Revision Commission comment to subdivision (c) of Civil Code section 1389.3 stated as follows: "The intent of the donee to assume control of the assets 'for all purposes' is most commonly manifested by provisions in the instrument of appointment which blend the property owned by the donee with the property subject to the power. Thus, where the donee's will provides that, 'I devise and appoint all property that I own at my death or over which I then have a power of appointment to A,' the blending of the owned and appointive assets shows an intent of the donee to treat the appointive assets as his own. *Thus, if A predeceases the donee* and the antilapse statute (Section 1389.4) does not dispose of the property, *the appointive assets will pass into the donee's estate to be distributed to his statutory heirs or next of kin.*" (Italics added.)

*Estate of Thorndike* (1979) 90 Cal.App.3d 468, 473 [153 Cal.Rptr. 487], points out that: "A general power of appointment is one which may be exercised in favor of anyone, including the donee, and is equivalent to a grant of *absolute ownership.*" (Italics added.)

It is apparent that Muriel intended to devise all of the property that would be hers at the time of her death, by her failure to specify any certain property in her will. Thus, she effectively asserted her ownership of the property over which she had a power of appointment and, upon the failure of any of her appointees to survive her, the property subject to the power of appointment, just as the other property belonging to her at the time of her death, passes into the residue of her estate, for distribution under the intestate succession laws of the State of California.

I would, therefore, hold that the determination by the trial court that the provisions of Civil Code section 1389.3, subdivision (c) were applicable to the facts in the instant case was proper so that his ruling that all of the income and principal remaining in trust "A' should pass to Muriel's estate rather than revert back to the estate of the donor, Everett, would be affirmed.

Respondent's petition for a hearing by the Supreme Court was denied October 13, 1982.